**William Torres MARTINEZ, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. A. No. 75–1832.**

United States District Court, D. New Jersey.

April 23, 1976.

F. Louis Caraballo, Brooklyn, N. Y., for petitioner.

Jonathan L. Goldstein, U. S. Atty. by A. Patrick Nucciarone, Asst. U. S. Atty., Newark, N. J., for respondent.

## OPINION

STERN, District Judge.

William Torres Martinez and a co-defendant were charged in a one-count indictment with the knowing possession of goods stolen from an interstate shipment, in violation of Title 18 United States Code, § 659. On the day of trial, after a jury panel had been summoned to the courtroom, Martinez notified the Court that he wished to retract his previous plea of not guilty.[1]  At all times

1. The colloquy between Martinez, his counsel and the Court, even prior to the actual retraction proceedings, is enlightening as to many of his claims, particularly as to his ability to understand and communicate in English:

THE COURT: * * *
All right.  The defendants are present.  Counsel is present.  Ready for trial?

MR. FLYNN: Yes, sir.

THE COURT: The defendants will seat themselves in the well of the court, please, at counsel table.

Mr. Tosti, send for a jury, please, a jury panel.

Spectators will kindly seat themselves to my left in the row of seats, benches, over there, leaving the two aisles free for the jury.

MR. FLYNN: May we approach the bench, your Honor?

THE COURT: There is no jury here, yet.

MR. RAFFAELO: I raised my hand, Judge.

THE COURT: Yes.  I'll hear you.  There is no jury panel.  They are on their way.

MR. RAFFAELO: On behalf of Martinez, your Honor, the defendant is ready, I think, to enter a plea of guilty to the indictment.

THE COURT: What about your client—

MR. FLYNN: The same for Logan, your Honor.

THE COURT: Hold the jury panel outside, please.

Mr. Tosti, shut the doors of the courtroom and I will make the proper inquiry pursuant to Rule 11.

Mr. Martinez, step forward, please.

Mr. Raffaelo, you say that Mr. Martinez— you say he wishes to withdraw his plea?

MR. RAFFAELO: A plea heretofore interposed by him and enter a plea of guilty.

THE COURT: Have you discussed this matter fully with him?

MR. RAFFAELO: Yes, your Honor.  Most fully with him.

THE COURT: Have you gone over with him the indictment and any possible defenses that he might have?

MR. RAFFAELO: I have gone over the indictment and any possible defense that he might have.

THE COURT: Mr. Kallmann, what is the possible penalty connected with this charge?

MR. KALLMANN: The penalty is a possible maximum imprisonment of ten years and a fine of $5,000, or both.

since his arraignment Martinez was represented by retained counsel. Before accepting the proffered guilty plea, this Court conducted an extensive Rule 11 proceeding.[2] Martinez, his attorney, and the prosecutor each responded to the inquiries of the Court. Their answers, if true, establish the voluntary and knowing nature of the plea of guilty, and negate the possibility that any sentence bargain was either struck in fact or communicated to the defendant by anyone. Martinez was told by the Court that if his plea of guilty were accepted, the Court could impose any sentence authorized by law, up to and including imprisonment for ten years and a $5,000 fine. After inquiry of all parties, after the Court itself informed the defendant that no bargain or arrangement had been made with the Court, and after the defendant again acknowledged the absence of any such inducement, the Court accepted the proffered plea. (Tr. 7/8/75 at 13). On September 22, 1975, this Court imposed a sentence of five years' imprisonment.[3]

THE COURT: Have you explained to your client that if he pleads guilty he will subject himself to a penalty of up to ten years' imprisonment and a fine of up to $5,000, or both?

MR. RAFFAELO: Yes.

THE COURT: What have you told him so far as what sentence he might receive?

MR. RAFFAELO: I told him that the government will not recommend any sentences, that the maximum prescribed by the statute is ten years.

THE COURT: Have you told him that he has no assurance whatsoever that I would impose anything less than the maximum sentence?

MR. RAFFAELO: None at all, your Honor, other than the fact, your Honor, that—I'll be honest with you—that I did state to him in the event that he did plead guilty perhaps the Judge may take into consideration the plea.

THE COURT: Did you give him any assurance that I will give him anything less than the maximum sentence?

MR. RAFFAELO: Absolutely no assurance at all.

That is correct, Mr. Martinez?

MR. MARTINEZ: Yes.

THE COURT: You heard what your counsel just said. You heard what your lawyer said?

MR. MARTINEZ: Yes.

THE COURT: You want to plead guilty to this charge?

MR. MARTINEZ: Yes.

THE COURT: Just a moment. Now, Mr. Martinez, I'm going to place you under oath and ask you certain questions.

Do you understand me?

MR. MARTINEZ: Yes.

THE COURT: If you do not tell me the truth—if you lie to me in response to the questions that I put to you, you will be committing the separate crime of perjury. Do you understand that?

MR. MARTINEZ: Yes.

THE COURT: All right. Swear in Mr. Martinez, please.

WILLIAM TORRES MARTINEZ, being first duly sworn, testified as follows:

THE CLERK: State your name, please.

THE WITNESS: William Torres Martinez.

EXAMINATION BY THE COURT:

Q. Mr. Martinez, your lawyer has said that you want to please [sic] guilty to this charge. Is that right?

A. Yes.

Q. Have you gone over this case with your lawyer?

A. Yes, sir.

Q. Have you discussed with him any possible defense that you might have to this charge?

A. Yes, sir.

Q. Are you satisfied, sir, with the legal representation which you have received in this case?

A. Yes, I am.

Q. What is your educational background? Have you been to school?

A. No.

Q. Did you go to public school?

A. Oh, yeah. I went to school. Not a school.

Q. Do you know how to read and write?

A. No.

Q. You do not?

A. No.

Q. Has your lawyer explained to you what the charge in this indictment is?

A. Yes, sir.

Q. Has he gone over with you the elements of the offense—that is, what the government has charged that you have done? Has he explained it to you?

A. Yes. Thoroughly.

2. The plea of guilty took place in 1975, prior to the effective date of the Revised Rule 11, F.R. Crim.P. The practice in this Circuit, however, as will be demonstrated, substantially anticipated the requirements of the Revised Rules.

3. Title 18 United States Code, § 659 provides for a maximum sentence of 10 years imprisonment and a $5,000 fine, where the value of the stolen goods is as alleged in the instant indictment.

Martinez now seeks to contest this Court's earlier determination that his plea of guilty was knowing and voluntary. He claims that the plea was entered unknowingly, involuntarily, and without the effective assistance of counsel. He seeks to withdraw his plea of guilty and requests an evidentiary hearing in order to establish the assertions advanced by his petition. Such a hearing is required unless " . . . the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Title 28 United States Code, § 2255. For the reasons which follow this Court so finds, declines to hold an evidentiary hearing, dismisses the petition, and denies the motion.

Some of Martinez' contentions, even if established, would not impugn the knowing and voluntary character of his plea of guilty.[4] Other assertions contained in his papers would furnish a basis upon which relief could be granted, but are conclusively negated by the files and records of the case.[5] The central allegation of the

4. Thus the allegations relied upon by petitioner to support his claim of the ineffective assistance of counsel would not furnish a predicate for relief. Martinez makes several claims of inadequate representation. First, he claims that his retained attorney "forced" him to plead guilty:

Defendant pleaded guilty after being misinformed that he had to plead guilty because his co-defendant, Gerald Logan, was pleading guilty. . . . In pleading guilty to the charges, as he was advised, defendant would spare a long and expensive, and futile legal ordeal since the evidence against him was strong.

Caraballo "affidavit," ¶ 3.

This allegation does not state grounds for relief. *Brady v. United States,* 404 F.2d 601, 602 (10th Cir. 1968), *aff'd,* 397 U.S. 742, 90 S.Ct. 7463, 25 L.Ed.2d 747 (1970). Second, Martinez claims that his attorney failed to effectively negotiate a plea bargain on his behalf. This allegation is apparently submitted by newly retained counsel without knowledge of the consistent refusal of this Court to engage in any form of sentence bargaining. In the context of the instant case, furthermore, it is difficult to see what charging concessions might have been wrung from the prosecution since the co-defendant had already decided to plead guilty and the prosecution was ready for trial. The defendant's testimony at the Rule 11 proceeding for the offense revealed further indications of a strong prosecution case. *Cf. United States ex rel. Smith v. Johnson,* 403 F.Supp. 1381, 1394 (E.D.Pa.1975). In sum, with respect to representation prior to and during his plea, Martinez has not alleged facts upon which a claim for relief could be predicated. *Moore v. United States,* 432 F.2d 730, 736 (3rd Cir. 1970). Martinez makes one additional assertion. He now alleges that he requested counsel to file a Notice of Appeal, and that counsel failed to do so. (Caraballo "affidavit," ¶ 5) The record conclusively indicates that no issues were reserved for appeal when the defendant pleaded guilty. *Compare Lefkowitz v. Newsome,* 420 U.S. 293, 95 S.Ct. 886 (1975); and *United States v. Zudick,* 523 F.2d 848, 851–852 (3rd Cir. 1975). Thus the plea of guilty, if valid, waived even constitutional defects in the prosecution. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). A putative appeal would therefore be restricted in the instant case to the sentence and to the manner of its imposition. Certain purely procedural claims might be waived by the failure to prosecute such an appeal. *See, Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109, 118 (1974); *Hill v. United States,* 368 U.S. 424, 429, 82 S.Ct. 468, 471, 7 L.Ed.2d 417, 421 (1962). The availability of relief under Rule 35 would, however, continue within its time limits. 2 Wright & Miller, *Federal Practice and Procedure* § 585 (1969). Petitioner has not adverted to *any* such issue that he desires to raise. In the complete absence of any showing of prejudice, this Court sees no reason to explore the issue by means of an evidentiary hearing. *Cf. Johnson v. United States,* 485 F.2d 240, 242 (10th Cir. 1973); *Farrington v. North Carolina,* 391 F.Supp. 714, 716 (M.D.N.C.1975).

5. For example, Martinez now contends that he is illiterate and does not understand English. He asserts that this language difficulty prevented him from comprehending the proceedings or from consulting with counsel.

The literacy of the defendant is not directly relevant to the issues at hand. What is constitutionally necessary and required is his comprehension of the proceedings and of his own role in respect to the waiver of rights. Martinez appeared before this Court at the retraction of his plea and at sentencing. He was represented by retained counsel at the plea and by newly retained counsel at the sentencing. Neither the defendant nor his attorneys requested the assistance of an interpreter on those occasions. They intimated no prior difficulties of communication. The transcript reveals several colloquies with the Court that

petition, however, is Martinez' claim that he deceived this Court when he disclaimed reliance on any sentence bargain or promise. He now alleges that such a promise was communicated to him by his then defense counsel, who also induced him to conceal it from the Court. He does not claim that any such agreement existed in fact. Indeed, he castigates his counsel for failing to plea bargain effectively on his behalf. *See* n.4, *supra*. He does allege, however, that he was induced to plead guilty by the representation of defense counsel that such a bargain had been struck.

In *Moorhead v. United States,* 456 F.2d 992 (3rd Cir. 1972), the Court dealt with a similar assertion by a defendant:

> In summary he [the defendant] alleges that he was assured by his attorneys that there was a "proposition" that if he pleaded guilty he would get no more than a suspended sentence or full probation, that this "proposition" was later changed to a "light sentence," that he was advised by his attorneys to respond affirmatively when asked by the court if his plea was being made voluntarily, that he is in fact innocent and has never admitted his guilt other than in open court.

> Needless to say, the records of the court reflect no such "proposition." Moreover neither of [the defendant's] § 2255 petitions alleges that Judge Clary or Judge Christian or the prosecuting authorities were parties to the "proposition." Rather the contention seems to be that his attorneys, perhaps falsely, assured him there was a "proposition" and thereby induced him to enter a guilty plea to a charge of which in fact he was not guilty. 456 F.2d, at 994.

Although the Rule 11 proceeding in *Moorhead* complied with the standards then applicable, *id.,* at 993, no explicit inquiry was conducted concerning the existence of any plea bargaining. The defendant was not asked and did not disclaim the existence of such a bargain or promise at the time of his plea. Moreover, the pre-sentence investigation conducted later contained statements attributed to the defendant which were inconsistent with guilt. Under these circumstances, the Court of Appeals held that a hearing was required on the allegations of the petition:

> Certainly there is nothing in the files and records of the case which suggests the possibility of relief. But the motions allege matters *outside the record* which, if true, cast serious doubt upon the voluntariness of the guilty plea. . . .

> We can exclude the possibility that the court was a party to any arrangement since Judge Christian would in any event have known of it. But none of the other possibilities are conclusively negated by the files and records of the case. They depend upon matters outside the record.

*Id.,* at 995 (Emphasis supplied). It is the holding of this Court that *Moorhead* does not govern the case at bar. The files and records of the instant case establish that petitioner is entitled to no relief.

■ *Moorhead* was decided prior to the implementation of significant changes in

---

clearly demonstrate an adequate command of the English language, including an extended discussion of the substantial prior criminal record of the defendant at the sentencing hearing. (See Tr. 9/22/75 at 5–10) The Court saw and heard the defendant, as the defendant responded to the questions of the Court. This ground for relief, insofar as it purports to demonstrate that the plea was an unknowing one, must therefore be rejected upon the conclusive evidence of the files and records of the case. In addition, the defendant now asserts that he was not informed of the consequences of a plea of guilty. This assertion is untenable, as the following colloquy indicates:

[THE COURT]
Q. Now, this crime—the crime to which you are offering to plead guilty is punishable by a sentence of up to ten years imprisonment or a fine of $5,000, or both. Did you know that?
[MARTINEZ]
A. Yes.
Q. In other words, if you plead guilty today I could impose ten years' imprisonment and a $5,000 in fines upon you. Do you know that?
A. Yes.
(Tr. 7/8/75: at 8–9)

plea retraction proceedings. The importance of procedural compliance with Rule 11, F.R.Crim.P., has long been recognized.[6] Such compliance is essential in order to serve the dual functions of the hearing: to detect and to reject involuntary and unknowing guilty pleas, and to produce a record which will sustain the voluntary and knowing plea against frivolous post-conviction attack.[7] In order to serve these two ends the scope of inquiry required of the District Judge at the Rule 11 hearing has been considerably expanded. The Court of Appeals for this Circuit has echoed the disquiet of many observers when confronted with perfunctory and often misleading plea retraction proceedings.[8] The mere declaration by a defendant that the proffered plea of guilty is voluntary can no longer suffice:

> We agree that an "[E]xamination of the defendant alone will not always bring out into the open a promise that has induced his guilty plea. It is well known that a defendant will sometimes deny the existence of a bargain that has in fact occurred, . . . out of fear that a truthful response would jeopardize the bargain." *Walters v. Harris,* 460 F.2d 988, 993 (4th Cir. 1972).

*United States ex rel. Culbreath v. Rundle,* 466 F.2d 730, 734 (3rd Cir. 1972). Well in advance of the 1975 amendments to Rule 11, significant steps to expand the inquiry beyond a brief colloquy with an unsworn defendant were mandated. *United States v. Hawthorne,* 502 F.2d 1183, 1188 (3rd Cir. 1974); *United States v. Valenciano,* 495 F.2d 585, 587–588 (3rd Cir. 1974); *Paradiso v. United States,* 482 F.2d 409, 413 (3rd Cir. 1973).

■ The Court punctiliously adhered to each of these successive requirements. In conformity with the supervisory mandate of the Court of Appeals, this Court explicitly addressed the attorneys in the presence of the defendant. All specifically disclaimed any plea or sentence bargain. (Tr. 7/8/75, at 3–5) The defendant was placed under oath. He was searchingly questioned. He was told that if he dissembled he would not be heard later. Finally, he was asked if anyone had instructed him to lie to the Court.

THE COURT: Just a moment. Now, Mr. Martinez, I'm going to place you under oath and ask you certain questions.

Do you understand me?

MR. MARTINEZ: Yes.

THE COURT: If you do not tell me the truth—if you lie to me in response to the questions that I put to you, you will be committing the separate crime of perjury. Do you understand that?

MR. MARTINEZ: Yes.

---

**6.** *See Santobello v. New York,* 404 U.S. 257, 261–262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432–433 (1971); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970); *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). *Cf. Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969).

**7.** As the Supreme Court has stated:

First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. *Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness deter-*

*mination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious determination of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.* [footnotes omitted]

*McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418, 424 (1969). (Emphasis supplied)

**8.** *See,* Notes of the Advisory Committee on Rules, Commentary on the 1974 Amendment to Rule 11, F.R.Crim.P.; Commentary to § 3.1(a), American Bar Association Project on Standards for Criminal Justice, *Standards Relating to Pleas of Guilty* 61 (1968); *The President's Commission on Law Enforcement and the Administration of Justice, The Challenge of Crime in a Free Society* 135–136 (1967).

THE COURT: All right. Swear in Mr. Martinez, please.

\* \* \* \* \* \*

[THE COURT]

Q. Now, this crime—the crime to which you are offering to plead guilty is punishable by a sentence of up to ten years imprisonment or a fine of $5,000, or both. Did you know that? In other words, if you plead guilty today I could impose ten year's imprisonment and $5,000 in fines upon you. Did you know that?

[MARTINEZ]

A. Yes.

Q. Have [sic] anybody told you that I would impose anything less than the maximum sentence upon you if you plead guilty here today?

A. No.

Q. Has anybody given you any indication of what sentence I would impose on you if you plead guilty?

A. No, sir.

Q. I tell you now, sir, if anybody has told you that they know what sentence I would impose or have [sic] given you any indication that I would impose anything less than the maximum sentence upon you, they are lying to you and they are deceiving you. Do you understand me?

A. Yes, sir.

Q. Do you believe me?

A. Yes, sir.

Q. I tell you now I have discussed your case with no one. I do not know, myself, what sentence I would impose upon you and will not know until I have seen the presentence report. Do you understand that?

A. Yes.

Q. I tell you now that if anybody has given you any indication or any assurance that I would impose anything less than the maximum sentence upon you they are deceiving you. Do you understand me?

A. Yes, sir.

Q. Do you believe me?

A. I do.

Q. Do you still wish to plead guilty?

A. Yes.

Q. Now, I tell you now that if anybody has made any promise to you or given you any indication of what sentence I would impose or given you any inducement to plead guilty, tell me now and I'll listen to you. But if you do not tell me now and if you wait until after I have pronounced sentence upon you and then come into court and say there has been some promise or some indication I will not listen to you then. Do you understand me?

A. Yes, sir.

Q. Do you have anything to tell me in that regard?

A. No.

\* \* \* \* \* \*

Q. Mr. Martinez, one final question that I am required by law to ask you: Has anybody told you what questions I would ask you here today and instructed you to lie to me when I asked you those questions? What is your answer to that question?

A. No.

(Tr. 7/8/75 at 4, 8–10, 12)

Even the most meticulously conducted Rule 11 proceeding cannot insulate the voluntariness determination made by the district judge from all collateral scrutiny. Matters which remain entirely outside the record (and thus unavailable to the district judge) may induce a plea of guilty that is involuntary or even unknowing. A court is therefore never relieved of the duty to afford careful attention to the allegations contained in a § 2255 petition. *United States v. Hawthorne*, 502 F.2d 1183, 1185 (3rd Cir. 1974). But the broadened scope of inquiry at the Rule 11 plea proceedings, coupled with the requirement that the defendant be sworn, has significantly narrowed the range of allegations which may reasonably be considered to be outside the record and thus appropriate for *de novo* scrutiny in a § 2255 proceeding. Since

*Hawthorne, Valenciano* and *Paradiso*, we write upon a new slate:

. . . A showing in the rule 11 plea reception proceeding may, under certain circumstances, obviate a subsequent § 2255 hearing if the plea reception record discloses that (1) the defendant states that no promise, representation, agreement, or understanding was made or that none other than that disclosed in open court was made to him by any person prior to the entry of the plea, and (2) the defendant affirmatively states that no out-of-court promise, representation, agreement or understanding required the defendant to respond untruthfully or contrary to the terms thereof, in the in-court plea reception proceedings, and (3) that the defendant understands that he may not at a later time contend that any promise, representation, agreement, or understanding was made by any person other than that set forth in open court.

*United States v. Valenciano*, 495 F.2d 585, 587 (3rd Cir. 1974). The expanded requirements of Rule 11 and the plain words of this Court addressed to this petitioner make just such a showing in the instant case.

*Moorhead* is thus distinguishable from the case at bar with respect to the record against which the allegations contained in the petition must be tested. Matters which remained outside the record in *Moorhead* were specifically addressed and determined here. Inquiry was made of counsel. The petitioner was told in the plainest and most direct language that no stated or unstated proposition or promise would be given effect. He swore in open court that none had been made. The belated assertion that both the unequivocal statements of his attorney and his own sworn testimony were mendacious does not suffice to require a relitigation of the voluntariness of his plea.[9] The burden which a petitioner would have to shoulder at any such hearing has previously been characterized as "heavy," *United States v. Hawthorne*, 502 F.2d 1183, 1187 (3rd Cir. 1974), and "virtually herculean," *United States v. Valenciano*, 492 F.2d 585, 587 (3rd Cir. 1974). On this record it is insurmountable. Upon the conclusive evidence of the files and records in this case, § 2255 relief must be denied.[10] To hold otherwise would promote neither the integrity of a guilty plea nor that of a subsequent withdrawal. It is one thing for a defendant to excuse an earlier misstatement by him to the judge on the grounds that he relied upon improper advice of counsel. It is quite another for him to offer the advice of others as an excuse for perjury he committed in a solemn proceeding in open court. There is ample reason for courts to refuse to entertain such claims. Courts cannot be blind to the educating effect of law, to the precept that the rules announced today will serve as guideposts for the litigants of tomorrow. To hold that the mere assertion by a defendant that he earlier committed perjury, without more, requires relitigation of the merits, offends established, sound and familiar principles of the finality of judgments. So to hold would seriously undermine respect for the oath,

---

**9.** The Court notes that the allegations in petitioner's complaint are not even supported by his own affidavit. Although the government has submitted an affidavit by the attorney involved which denies even having made a promise to petitioner, this Court relies instead upon the prior "files and records" of the case.

**10.** Other Courts of Appeals have already held that this result is appropriate in the face of the expanded record now available from a Rule 11 proceeding. *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975); *Bryan v. United States*, 492 F.2d 775 (5th Cir. 1974) (en banc), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974), *reh. denied*, 419 U.S. 1117,

95 S.Ct. 798, 42 L.Ed.2d 817 (1975); *Johnson v. Massey*, 516 F.2d 1001 (5th Cir. 1975); *Rosado v. United States*, 510 F.2d 1098 (5th Cir. 1975); *Frank v. United States*, 501 F.2d 173 (5th Cir. 1974); *Moody v. United States*, 497 F.2d 359 (7th Cir. 1974); *Faulisi v. Daggett*, 527 F.2d 305 (7th Cir. 1975); *Hedman v. United States*, 523 F.2d 1220 (5th Cir. 1975). *But see: Vandenades v. United States*, 523 F.2d 1220 (5th Cir. 1975), and *Dugan v. United States*, 521 F.2d 231 (5th Cir. 1975) (holding that evidence of governmental or judicial overreaching, supported by detailed affidavit, requires a hearing under § 2255 even in the face of the Rule 11 record).

and ultimately for the judicial process itself.

It is no answer to suggest that a hearing should nevertheless be granted in the belief that should perjury be revealed, the appropriate sanction lies in the attendant criminal jeopardy of the perjurer. That argument overlooks the fact that such a petitioner is seeking and not evading prosecution. If he prevails on his claim, his plea of not guilty is reinstated and he then must face trial on the underlying charges. He knows, just as the Court knows, that in the event of a conviction a subsequent prosecution for perjury based on his testimony at the original plea retraction proceeding is unlikely. The burgeoning caseloads of the courts, the limitations on prosecutorial resources, and the requirements of the Speedy Trial Act all militate against a second prosecution. On the other hand, were such a petitioner to be acquitted on the original charges, it would be a foolhardy prosecutor indeed who sought to persuade yet another jury to convict him for falsely swearing to his guilt on charges of which he was later exonerated.

In the instant case there is another consideration which precludes relitigation. The unexpressed premise of the petitioner's assertions is that he lied under oath in the hope that the district court itself was complicit in a grotesque charade. For this Court did more than simply inquire of this petitioner whether his plea was motivated by threat or promise. The transcript reveals that whatever anyone else may have told Martinez about his sentence before he walked into court, the Court itself emphatically instructed him to disregard it. Employing language like "lying" and "deceiving," the Court repeatedly warned the defendant that if he was placing reliance on any promise by anyone with regard to sentence his reliance was misplaced, and that the Court would regard itself free to impose any sentence up to and including the maximum. After hearing and clearly understanding what the Court told him, Martinez again elected to plead guilty. Before he

did, however, one final admonition was administered:

Q. *I tell you now that if anybody has given you any indication or any assurance that I would impose anything less than the maximum sentence upon you they are deceiving you. Do you understand me?*

A. *Yes, sir.*

Q. *Do you believe me?*

A. *I do.*

Q. Do you still wish to plead guilty?

A. Yes.

Q. Now, I tell you now that if anybody has made any promise to you or given you any indication of what sentence I would impose or given you any inducement to plead guilty, *tell me now and I'll listen to you. But if you do not tell me now and if you wait until after I have pronounced sentence upon you and then come into court and say there has been some promise or some indication I will not listen to you then.*
Do you understand me?

A. Yes, sir.

Q. Do you have anything to tell me in that regard?

A. No.

(Tr. 7/8/75 at 9–10) (Emphasis supplied)

The Court finds it difficult to see what more could be done to make the defendant perceive that his plea was conditioned on no promise as to sentence, and that he would not later be permitted to assert the very claim he now puts forward.

This petitioner affirmed his understanding of the issue upon the record. He acknowledged that he would not be heard again in this regard. Absent extraordinary circumstances, he is bound by the record. Martinez does not allege that his plea was induced by an actual bargain struck with Court or prosecutor. He makes instead the more limited assertion that his plea was made in *reliance* upon statements conveyed to him by his own counsel which suggested

the existence of such an agreement.[11] The standards by which such a claim of reliance must be judged were not before the court in *Moorhead*, since that petition apparently encompassed the allegation that an actual agreement was reached, 456 F.2d, at 995, and the record did not permit rejection of the factual assertions without a hearing. *Moorhead* left undisturbed the rule in *United States v. Schneer*, 194 F.2d 598 (3rd Cir. 1952):

> The defendant, however, states that he is not concerned with what transpired between the Assistant and his former counsel. His position is that he was misled when he changed his plea to nolo contendere. He says that it is uncontradicted that his attorney told him he would not be imprisoned, and therefore, whether his attorney was misled or merely misunderstood the Assistant is irrelevant. We agree with the defendant that the critical issue now is whether he changed his plea in reasonable reliance upon misrepresented information, limiting the issue to the fact that the misrepresentation, however, innocent, was made by the defendant's counsel, an officer of the Court.

194 F.2d, at 600 (Emphasis supplied).[12] The requirement that such reliance be reasonable was restated in *United States v. Hawthorne*, 502 F.2d 1183 (3rd Cir. 1974), where the Court analyzed *Schneer* and concluded:

> It would appear, therefore, that under present case law if Hawthorne's *pro se* letters can be read to assert that he *reasonably believed* that the statements of his counsel meant that arrangements had been made with respect to the length of sentence to be imposed upon a plea of guilty, he must be afforded some type of hearing. If, on the other hand, counsel's statements, as revealed in Hawthorne's letters, may reasonably be regarded as mere predictions of the future actions of the judge, Hawthorne is not entitled to such hearing.

502 F.2d, at 1187 (Emphasis added).

Not every "understanding" or "proposition" which is conveyed to a defendant may reasonably be relied upon.[13] Every defendant, and indeed every defense counsel, hopes for a favorable and lenient disposition of pending charges. To an extent both are predisposed to "believe" that things will end well instead of badly. It is for this reason that the defendant in this case was told in open court and in plain language that *any* reliance by him on the statements of others was misplaced, and it is for this reason that he was then afforded the opportunity to withdraw the proffered plea of guilty. (Tr. 7/8/75 at 9–10).

■ In the face of this exchange, even were petitioner able at a hearing to establish that defense counsel conveyed a "proposition" to Martinez, any reliance by petitioner thereon was surely not "reasonable" within the meaning of *Schneer* and *Hawthorne*. Governmental misconduct or overreaching may be, in an extreme case, of such an overbearing character as to threaten the ability of the district judge to remove its taint even by the most straightforward talk and the most searching inquiry. *See Fontaine v. United States*, 411 U.S. 213,

---

**11.** Although the matter is not entirely free from doubt, given the disorganized and inartful pleadings here, it seems that the allegations are sufficient to surmount the "mere prediction" rule enunciated in *Masciola v. United States*, 469 F.2d 1057 (3rd Cir. 1972).

**12.** *Schneer* involved a motion seeking leave to withdraw a plea of guilty, a proceeding which has been recognized to be closely analogous to a § 2255 proceeding. *Woodward v. United States*, 426 F.2d 959, 964 (3rd Cir. 1970); *United States v. Mainer*, 383 F.2d 444, 447 (3rd Cir. 1967).

**13.** It should be noted that the Court of Appeals for the Second Circuit has recited similar jurisprudence; and has limited relief to cases where the reliance was objectively demonstrated and was reasonable. *Compare United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2nd Cir. 1972), *cert. denied* 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973); and *United States ex rel. LaFay v. Fritz*, 455 F.2d 297 (2nd Cir. 1972), *cert. denied* 407 U.S. 923, 92 S.Ct. 2471, 32 L.Ed.2d 809 (1972); *with United States ex rel. Oliver v. Vincent*, 498 F.2d 340 (2nd Cir. 1974); and *Mosher v. LaVallee*, 491 F.2d 1346 (2nd Cir. 1974), *cert. denied* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).

214–215 (1973) (uncounseled defendant alleging physical abuse and illness while in custody); *Sanders v. United States*, 373 U.S. 1, 19–20, 83 S.Ct. 1068, 1079, 10 L.Ed.2d 148, 163–164 (1963) (uncounseled defendant alleging incompetency due to the administration of·narcotic drugs by the authorities while in custody); *Machibroda v. United States*, 368 U.S. 487, 489–490, 82 S.Ct. 510, 511, 7 L.Ed.2d 473, 475–476 (1962) (assertions of extensive plea bargaining with an incarcerated defendant which was concealed from defense counsel). But no such governmental conduct or misconduct is even alleged in the instant case. Martinez simply states that he chose to rely upon the "proposition" allegedly conveyed to him by defense counsel, in the teeth of the·Court's plain and unambiguous instruction that any such promises were lies and deceptions. He apparently chose, or so his petition implies, to disbelieve the Court.

In sum, this petitioner was told the truth of his status in open court. Short of notifying each defendant of the final disposition of the case prior to accepting a plea of guilty, it is difficult to see what more could be done to remove any taint which the alleged conversation with defense counsel could have created. In the absence of any allegation of government misconduct, or diminished capacity to comprehend, even a demonstrably true claim of a promise by defense counsel would be without legal significance. In the face of what the Court told petitioner, his reliance on what might earlier have been said by another would not be reasonable. Even if he established what he now claims he can, he would nevertheless be entitled to no relief.

█ Similarly, petitioner's motion for leave to withdraw his plea of guilty will be denied. The assertions of innocence in his moving papers are at best equivocal. His statements under oath at the time of his plea, his statements at sentencing and the statements attributed to him in the pre-sentence report (which, though given the opportunity, he did not contest) are plain confessions of guilt, as were the statements of petitioner's co-defendant when the co-de-

fendant pleaded guilty. In the absence of any colorable claim of innocence, and upon the record of the case in its entirety, there is no "manifest injustice" in permitting the plea of guilty to stand. Rule 32(d), F.R. Crim.P.; *United States v. Rich*, 516 F.2d 861 (2nd Cir. 1975). Leave to withdraw will therefore be denied.