Arthur WILLIAMS, Petitioner,

v.

UNITED STATES of America, Respondent.

Civ. A. No. 76–2158.

United States District Court, D. New Jersey.

Feb. 22, 1977.

Arthur Williams, pro se.

Jonathan L. Goldstein, U. S. Atty. by Edwin R. Matthews, Asst. U. S. Atty., Newark, N. J., for respondent.

## OPINION

STERN, District Judge.

Petitioner Arthur Williams seeks relief from his conviction and sentence for bank robbery. Petitioner was indicted for bank robbery on February 28, 1975. The indictment arose out of the robbery of the First State Bank of Hudson County in Jersey City on November 30, 1974. The first count of the indictment charged that petitioner knowingly and wilfully took, by force, violence and intimidation, some five thousand dollars from the custody of the bank, in violation of Title 18 U.S.C. § 2113(a). The second count of the indictment charged that petitioner, during the commission of the offense described in Count One, knowingly and wilfully placed the lives of the employees in jeopardy through the use of a hand gun, in violation of Title 18 U.S.C. § 2113(d). Although the indictment was assigned to this Court for trial on February 28, 1975, the case was placed on the inactive list on March 27, 1975 because petitioner was a fugitive. In late October petitioner was arrested on other charges by the South Carolina State Police. An Order of Removal was filed on October 29. The petitioner was subsequently returned to this District to stand trial on the bank robbery indictment. He was arraigned on November 13, 1975. Counsel was appointed to represent him and a plea of not guilty was entered on his behalf on November 24. A peremptory trial date of January 5, 1976 was set at that time.

In mid-December petitioner notified the Court by counsel that he wished to retract his previously entered plea of not guilty to Count One of the indictment, pursuant to a plea agreement reached with the United States. Under the terms of the agreement the United States agreed to move the dismissal of Count Two and to make no sentencing recommendation to the Court. This charging concession by the United States reduced petitioner's maximum potential sentence exposure from 25 years and a $10,000 fine to 20 years and a $5,000 fine. After making inquiry into the voluntary and knowing nature of the proposed waiver of rights, this Court inquired into the factual basis for the proffered plea of guilty:

Q. [THE COURT] All right. Now, Count 1 of this indictment charges that on or about November 30, 1974, at Jersey City, you knowingly and wilfully and by force and violence did take from the person and presence of employees of the First State Bank of Hudson County at 32 Journal Square, Jersey City, New Jersey, approximately $5,750 belonging to and in the care and custody of that bank, the bank being insured by the Federal Government. Did you do that?

A. [THE DEFENDANT] Yes, sir.

Q. What did you do?

A. Because I was, you know, using drugs at the time.

Q. I said "What did you do?"

A. What do you mean what did I do?

Q. Did you go in to the bank that day?

A. Yes, sir.

Q. What did you do in the bank?

A. I went in there and got the money.

Q. How did you get the money?

A. With a note.

Q. In other words, you stole some money?

A. Yes, sir.

THE COURT: All right. The government is satisfied that there is a sufficient factual basis for the entry of this plea?

MR. MATTHEWS: [ASSISTANT U.S. ATTORNEY] Your Honor, it should be established, I believe, that there was force or intimidation used.

BY THE COURT:

Q. What did you put on the note?

A. I don't remember.

THE COURT: Do you have the note here?

MR. MATTHEWS: Your Honor, I have a copy of the note here.

(Note handed to the Court.)

MR. MATTHEWS: Your Honor, that is a photograph of the note used in the matter.

Q. Take a look at this note, Mr. Williams. Is this the note, a copy, a photocopy of the note that you gave to the teller?

MR. MARUCCI: [DEFENSE COUNSEL] Judge, I've shown Mr. Williams our copy.

THE COURT: Just please do what I ask.

(Note handed to the defendant)

Q. Is that right?

A. That's right.

THE COURT: All right. That will be marked as a Court's exhibit, if I may.

MR. MATTHEWS: Yes, your Honor.

THE COURT: For purposes of the plea.

(Note was marked Exhibit C-1.)

Q. Is that note written in your handwriting?

A. Yes, sir.

THE COURT: I am satisfied that there is a sufficient factual basis for the entry of the plea.

Tr. 12/12/75, at 8–10.[1] At the close of the Rule 11 proceeding the plea of guilty was accepted, and sentencing was set down for January 26, 1976.

On that day petitioner's case was moved for sentence. Petitioner did not initially indicate any dispute with the presentence report, which noted that petitioner had admitted his guilt. Petitioner, in fact, sought to rely upon the statements in the report concerning his military record and previous narcotics addiction. (Tr. 1/26/76, at 2) This Court, however, raised *sua sponte* the allegations contained in the report to the effect that petitioner shot at a policeman while fleeing from the bank:

THE COURT: If you want an evidentiary hearing on it, I will grant it to you. Because, Mr. Marucci, that is a fact of importance. I would be dissembling and lying to you if I told you that I could disregard the allegation that this defendant in the course of a bank robbery with a pistol, while escaping, engaged in an exchange of shots with a police officer.

*Id.,* at 3. After the Court itself flagged the issue, petitioner requested that the information either be disregarded or that an evidentiary hearing be provided. The Court then ordered that an evidentiary hearing be granted to the petitioner. After several adjournments of the hearing and sentence, some requested by petitioner to permit him to explore cooperation with the government in another district, the evidentiary hearing was held.

Oral argument was heard on a variety of motions, and this Court determined that the standard of "proof beyond a reasonable doubt" should govern the hearing, and that the trier of fact should be the Court itself. The United States then presented the testimony of two witnesses who were present at the scene of the crime, a Jersey City fireman and an East Orange police officer. Both eyewitnesses identified the petitioner as the man they saw fleeing the bank. Both testified unequivocally that he fired several shots at them. The United States then called an FBI agent who testified that he had interviewed petitioner when he was in custody in South Carolina. He testified that petitioner admitted firing the shots at the pursuers. The petitioner called no witnesses and did not testify. This Court found that the United States had proved beyond a reasonable doubt that petitioner was in possession of a hand gun and that he fired shots at those pursuing him during his escape from the bank. (See Tr. 4/26/76, at 77) At the conclusion of the hearing the Court proceeded to sentence. After con-

---

**1.** The Exhibit C–1 to which reference was made in the transcript reads as follows:

Bitch this is a stickup. Put all the money in the bag if you move or try to do something smart I will blow your fucking head off. You got 4 second

Sign Death

P.S. Put note in bag

sidering various mitigating factors, the Court imposed a sentence of 15 years imprisonment. (*Id.,* at 76–81) A Notice of Appeal subsequently filed by petitioner was withdrawn by stipulation of the parties, pursuant to F.R.App.P. 42(b). On November 4, 1976, petitioner's motion for reduction of sentence was denied. Petitioner then filed the instant lawsuit.[2]

Petitioner raises four contentions which, he claims, warrant vacation of his conviction. First, he contends that the federal bank robbery statute under which he was convicted is unconstitutional. Second, he claims that the indictment charging him with bank robbery was void because the United States committed "fraud" in the Grand Jury by implying that jurisdiction over the offense was properly laid in federal court. Third, he attacks the voluntariness of his plea of guilty, claiming that he was under the influence of narcotics at the time of his retraction. Finally, he contends that he received the ineffective assistance of counsel during certain portions of the proceedings.

The first two points raised by petitioner are clearly without merit. The relevant statute, Title 18 U.S.C. § 2113, has been sustained as a constitutional exercise of Congressional power by every court that has considered the issue. *See, e. g., United States v. Allen,* 458 F.2d 988 (3rd Cir.), *cert. denied,* 406 U.S. 970, 92 S.Ct. 2429, 32 L.Ed.2d 670 (1972). No fraudulent violation of any federal law took place when this case was presented to a federal grand jury for indictment. The indictment is sufficient on its face in its allegations of federal jurisdiction.

The third claim advanced by petitioner is that his plea of guilty was unknowing because:

Petitioner is a known narcotic's [sic] addict. The petitioner was under the heavy influence of narcotics at the time of his guilty plea, evidentary [sic] hearing and sentencing which made him unable to assist his counsels on his defence [sic] and understanding the proceedings against him. Petitioner has witnesses and physical evidence to corroborate his allegation in that he was under the influence of narcotics rendering him incompetent to plead guilty. See *Hansford v. United States,* 124 U.S.App. 387, 365 F.2d 920 (C.A.D.C.) 1966 [sic].

Were petitioner to succeed in establishing that he was ". . . under the heavy influence of narcotics" at the time of his plea, the plea might, in some circumstances, be vulnerable to collateral attack. *See Sanders v. United States,* 373 U.S. 1, 19–20, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (uncounseled defendant alleging incompetency due to narcotics administered by the authorities while in custody). What is conclusively rebutted by the files and records of this case, *see* Title 28 U.S.C. § 2255, is that petitioner was in such a condition at the time of his plea.

It is germane to note that the first allegation regarding possible incompetency due to the present influence of narcotics was made by petitioner in his "Amendment to Habeas Corpus Motion" filed on January 5, 1977. Petitioner raised no such issue in his original petition for release; nor did he advert to any such drug-induced impairment in his previous communications with this Court on June 8, 1976 (*pro se,* regarding his place of confinement); on November 2, 1976 (*pro se,* regarding treatment for a back injury); or in his earlier requests for a reduction of sentence.[3] To the contrary,

---

**2.** This lawsuit has arrived in several portions under a variety of captions and asserted heads of jurisdiction. The Court has treated the entire file as one application for relief pursuant to Title 28 U.S.C. § 2255.

**3.** Petitioner himself swore, in an affidavit submitted in connection with his earlier Rule 35

Application, that an asserted "lack of control over [his] mental faculties, [was] because of [his] *prior* heavy use of drugs, continuing trauma relating to [his] Viet Nam service and lack of understanding of the legal process [he] was involved in." Affidavit of Arthur Williams, August 2, 1976, ¶6. (Emphasis supplied)

petitioner has made numerous statements of record inconsistent with his belated assertion that he was under the influence of narcotics at the time of his plea. First, this Court examined petitioner under oath at the time of his plea:

Q. [THE COURT] Mr. Williams, as you stand before me now are you under the influence of any drugs or alcohol or narcotics or are you taking any medication?

A. [PETITIONER] No.

Q. Do you understand everything that is going on here?

A. Yes, sir.

Q. You stand accused of a crime under Count 1 of this indictment but although you are accused of this crime the law presumes that you are innocent. Do you understand me?

A. Yes, sir.

Q. And you have an absolute right to require the government to demonstrate your guilt by proving it beyond a reasonable doubt. Do you understand me?

A. I understand.

Tr. 12/12/75, at 4. Nothing in petitioner's demeanor at his retraction, or at his hearing and sentence (where he made allocution personally, see Tr. 5/27/76, at 76) suggested any drug-induced impairment whatsoever, and petitioner swore that no such factor existed. At no time did petitioner's able and experienced counsel, an Assistant Federal Public Defender, intimate the slightest difficulty in proceeding on petitioner's behalf.

Finally, the presentence report contained statements attributed to the defendant, which were not contested, to the effect that he had ceased to take narcotics some months prior to the retraction of his plea. (Presentence Report, at 6) While defense counsel characterized petitioner as an addict at sentencing, not for a moment did he intimate that petitioner's use of narcotics continued through the legal proceedings in this case. In sum, petitioner's belated assertion that he was under the influence of narcotics at the time of his plea and sen-

tence must be utterly rejected, contradicted as it is by his sworn testimony and every other file and record of the case. *Cf. Martinez v. United States,* 411 F.Supp. 1352 (D.N.J.1976), *aff'd,* 547 F.2d 1162 (3rd Cir. 1977) (Table). This ground for relief will be denied.

Petitioner also contends that he received the ineffective assistance of counsel from the Federal Public Defender Organization. Here too, the course of petitioner's allegations has not run entirely true. Petitioner initially filed his lawsuit alleging the ineffective assistance of counsel with respect to the appellate process:

The Petitioner alleges and shows the Court: That in early part of May, John McMahon, 1st asst. Federal Defender, was assigned to the petitioner to represent the petitioner and prepare his briefs for appeal.

The respondent, John F. McMahon has failed to meet A.B.A. standards that are require [sic] of him binding on him as his duty he has done so by: 1. His failure to confer and consult with the petitioner; 2. His failure to keep the petitioner informed of the development of his; 3. His failure to afford the petitioner any discovery material available; and 4. His Failure to inform the petitioner of his constitutional right.

Petition, at ¶2. The United States thereafter filed its response, and included as exhibits an affidavit of petitioner's counsel and a written statement by petitioner, each reciting that, after discussion with petitioner and upon petitioner's consent, the appeal originally filed was to be withdrawn. Some time after this response was sent, petitioner filed what he styled to be an "Amendment to Habeas Corpus Motion" which dealt with claimed inadequacies of representation *before* his plea of guilty was entered. This document contains seventeen allegations of error, dilatoriness, and other transgressions on the part of his appointed attorneys. While varied and imaginative, these allegations simply do not establish defective representation under the relevant tests. *See Moore v. United Sates,* 432 F.2d 730, 736

(3rd Cir. 1971). *See also, United States v. Hines,* 470 F.2d 225, 231 (3rd Cir. 1972); *United States v. Varga,* 449 F.2d 1280, 1281 (3rd Cir. 1971). The government's case against petitioner was overwhelming. Large portions of it were in fact presented to the Court at the evidentiary hearing on sentencing matters. The points raised by petitioner, who even now does not repudiate his previous unqualified admissions of guilt, simply do not establish a claim that the decision to recommend a plea of guilty to the lesser count was beyond the range of competence expected of attorneys. This Court itself is in a position to judge that his post-plea representation was tenacious, able and energetic. Accordingly, the claim for relief will be denied in all particulars.