**UNITED STATES of America**

v.

**James L. STASSI, Appellant.**

**No. 78–1190.**

United States Court of Appeals,
Third Circuit.

Argued Aug. 8, 1978.
Decided Sept. 12, 1978.

---

Stephen Robert LaCheen, Philadelphia, Pa., for appellant.

Robert J. Del Tufo, U. S. Atty., Newark, N. J., for appellee; Samuel A. Alito, Jr., Asst. U. S. Atty., Newark, N. J., on brief.

Before ALDISERT, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Title 18 U.S.C. § 1623 was enacted in 1970 as part of the Organized Crime Control Act to provide that one who under oath "in any proceeding before or ancillary to any court . . . of the United States knowingly makes any false material declaration" is guilty of the offense of false declarations. The statute further provides that an indictment alleging that "the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—(1) each declaration was material to the point in question, . . ."[1]

The question for decision in this appeal following conviction under the Act is whether there was sufficient evidence to convict on the theory that appellant made statements under oath at a Rule 11 guilty plea hearing on June 2, 1975, that were inconsistent with those made at a subsequent proceeding under 28 U.S.C. § 2255 to vacate the guilty plea. In a non-jury proceeding the district court found the statements to be inconsistent and material to the points in question. We affirm.

Although appellant has pressed other arguments, his major contention is that prior to the amendment of Rule 11 on July 31, 1975, establishing a plea agreement procedure,[2] there was a widespread practice of " 'routinely lying' under oath at Rule 11 colloquies." Appellant's Brief at 19. He argues that it is manifestly unfair to single him "out of the thousands of defendants who took their oaths with crossed fingers and who swore with forked tongues that their guilty pleas had not been induced." Appellant's Brief at 20.[3] Distilled to its

---

1. House Report No. 91–1549 (Judiciary Committee) accompanying S.30 described the new provision:

   This title is intended to facilitate Federal perjury prosecutions and establishes a new false declaration provision applicable in Federal grand jury and court proceedings. It abandons the so-called two-witness and direct evidence rule in such prosecutions and authorizes a conviction based on irreconcilably inconsistent declarations under oath. [1970] U.S.Code Cong. & Admin.News pp. 4007, 4008.

2. The 1975 amendment to Rule 11 included a new section, 11(e)(1)–(6) entitled "Plea Agreement Procedure." Subdivisions set forth provisions relating to notice, acceptance or rejection of plea agreements, the time for notification to the court of plea agreements, and the inadmissibility of pleas, offers of pleas, and related statements.

3. Appellant's brief states at 19–20:

   The proceedings before the Court on the guilty plea of June 2, 1975, . . . preceded in time the August 1, 1975 effective date of the Amendment to Rule 11; and were so freshly minted that even the Court, as appears from the colloquy, may not yet have had full grasp of the full significance of the amendment.

   Certainly, the colloquy did not delineate to Appellant the true intendment of the amended procedure, that a plea bargain had become *res grata* in the eyes of the law. Indeed, if a judge learned in the law could not, on June 2,

essence, appellant's argument is that his plea was received before the Rule 11 amendment; that prior to the July 31, 1975 amendment, courts in this circuit were not hospitable to negotiated pleas, and that prosecutors and defendants therefore participated in charades to withhold the realities of negotiated pleas from the courts. Accordingly, he argues that as a matter of law, he could not "knowingly" have made a false declaration at the reception of the guilty plea. It thus becomes necessary to review this court's cases in order to determine whether plea bargaining in the courts of this circuit was on June 2, 1975, in appellant's words, a "freshly minted" judicial experience.

## I.

As early as 1966 we noted the practice of plea bargaining in *Norman v. United States*, 368 F.2d 645, 647 n.8 (3d Cir. 1966). We were hospitable to a habeas corpus contention in 1969 that a "commitment" as to sentence had been breached in a guilty plea received in a state court, *United States ex rel. Fink v. Rundle*, 414 F.2d 542 (3d Cir. 1969), and two years later we carefully analyzed a colloquy to determine whether there was "a form of implicit plea bargaining." *Bannister v. United States*, 446 F.2d 1250, 1252–53 (3d Cir. 1971) (in banc, opinion of Biggs, J.). By 1971 the Supreme Court referred to plea bargaining as "an essential component of the administration of justice," stating that "[p]roperly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Thereafter, this court stated, clearly and forthrightly: "There is nothing inherently wrong in honest plea bargaining." *United States ex rel. Cul-*

*breath v. Rundle*, 466 F.2d 730, 735 (3d Cir. 1972). This statement by us was almost three years before the district court accepted appellant's guilty plea on June 2, 1975.

In *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972), we held that the due process lesson of *Santobello* was inapplicable where no promise or understanding had been breached by the Government prosecutor, and in *Paradiso v. United States*, 482 F.2d 409, 413 (3d Cir. 1973), we announced that, as a "prophylactic" measure, plea bargains should be placed on the record. In *Moorhead v. United States*, 456 F.2d 992 (3d Cir. 1972), we held that a federal defendant was entitled to an evidentiary hearing on an application pursuant to 28 U.S.C. § 2255 in which it was alleged that his counsel had made an actual out-of-court misrepresentation as to a "proposition" or arrangement relating to the guilty plea. Procedures were further refined in *United States v. Valenciano*, 495 F.2d 585, 587–88 (3d Cir. 1974). *United States v. Hawthorne*, 502 F.2d 1183 (3d Cir. 1974), reaffirmed the precepts announced in *Moorhead* and *Valenciano*, and in *United States v. Dixon*, 504 F.2d 69, 72 (3d Cir. 1974), we explicitly reaffirmed our statement in *Paradiso*.

This formidable litany of cases that recognized plea bargaining as early as 1966 and thereafter implemented the procedure as an effective instrument of administering criminal justice compels a rejection of appellant's major contention—that prior to the 1975 amendment of Rule 11, the courts in this circuit were inhospitable to plea bargains. Appellant's basic contention flies in the face of irrefragable judicial experience.

1975, adequately express to Appellant the full extent of the acceptance newly-won by the ancient and formerly dishonorable practice of plea bargaining, how, then, can a semi-literate defendant be held to have known that the prior accepted procedure of "routinely lying" under oath at Rule 11 colloquies had suddenly become anathmetic [sic] to the Courts?
Under such circumstances why should *this* Defendant, out of the thousands of defend-

ants who took their oaths with crossed fingers and who swore with forked tongues that their guilty pleas had not been induced, be singled out for punishment? Why indeed, and upon what justification, should this Defendant be denied equal protection of the very rule of law (Rule 11, Fed.R.Crim.P.) adopted and amended for the protection of all defendants similarly situated?

## II.

We are left to determine whether the appellant's statements were "inconsistent to the degree that one of them is necessarily false" and, if so, whether "each declaration was material to the point in question." 18 U.S.C. § 1623(c). At the guilty plea hearing Stassi testified under oath that no "promises" or "indications" had been made concerning the sentence that would be imposed by the court upon accepting a guilty plea.[4] In February 1976, Stassi filed a pro se motion for the withdrawal of his plea, alleging, *inter alia*, that "the government did not live up to its plea bargain arrangements, which was a promise of a sentence not to exceed two (2) years." Appendix at 31a. When appellant appeared for the motion, Judge Stern appointed Roger A. Lowenstein, the experienced Federal Public Defender for the District of New Jersey, to represent him. The judge directed counsel's attention to his opinion in *Martinez v. United States*, 411 F.Supp. 1352 (D.N.J.1976), in which he suggested at length the possibility of perjury prosecution against those who lied during Rule 11 proceedings or in subsequently filed § 2255 actions.[5]

Emphasizing the views he had previously expressed in *Martinez*, Judge Stern specifically addressed the Public Defender:

The Court: Now, in fairness to you, I want you to familiarize yourself with that. Finally, I do not know what the defendant intends to do here but I remind you as his counsel that he was under oath at the time of the Rule 11 proceeding and if he wants to testify here he will have to be under oath here.

I say this not by way of threat whatsoever but only in fairness so that your client up to this point had been proceeding without the benefit of counsel, can make informed choices as to what he wants to do. Do you take my meaning?

Mr. Lowenstein: I certainly do, Judge.

Appendix at 37a. Represented by the Public Defender, not the attorney who had represented him at the guilty plea, Stassi disregarded the court's reminder of the potential danger of perjury. One month later he filed an affidavit in support of his § 2255 motion, stating that the government attorney had told him that Judge Stern would agree to a sentence of two years; that his prior attorney had made a similar statement; and that his counsel had instructed him "to say 'no promises' when Judge Stern questioned [him] about promises." Appendix at 41a.[6]

4. The following colloquy took place at the reception of the guilty plea:

> Q. Now, has anybody given you any indication or promise that if you plead guilty here today I would impose anything less than the maximum sentence upon you?
> A. There was no promise made of any sort.
> Q. Anybody give you any indication as to what my sentence might be?
> A. No. There is no indication of any sentencing.
> Q. I tell you this, Mr. Stassi: I have never discussed your case with anyone. As I sit here now I don't know what sentence I would give you and will not know until I have seen a presentence report. I tell you, further, that if anyone has given you any indication of what sentence I would give you if you pled guilty here today they are lying to you and deceiving you. Do you understand me?
> A. Yes, sir.
> Q. Do you believe me?
> A. I believe you.
> Q. I tell you now that if anyone has given you any such promise or indication, tell me now and I will listen to you. But if you wait until after I pronounce sentence and if then you are dissatisfied with my sentence and try to tell me of some promise or indication or inducement, I won't listen to you then. Do you understand me?
> A. Yes, sir.
> Q. Do you have anything to tell me in this regard?
> A. No.

Appendix at 13a–14a.

5. Judge Stern observed in *Martinez*:

> It is one thing for a defendant to excuse an earlier misstatement by him to the judge on the grounds that he relied upon improper advice of counsel. It is quite another for him to offer the advice of others as an excuse for perjury he committed in a solemn proceeding in open court.

411 F.Supp. at 1359.

6. The affidavit stated in relevant part:

> James L. Stassi, being duly sworn upon his oath, deposes and says:

Judge Stern denied Stassi's motion, *Stassi v. United States*, 439 F.Supp. 277 (D.N.J. 1976), *aff'd mem.*, 559 F.2d 1210 (3d Cir. 1977). Judge Stern's opinion concluded by stating, "this opinion will be referred to the Office of the United States Attorney for whatever action is deemed appropriate in light of the contradictory positions espoused by petitioner under oath." 439 F.Supp. at 281. Stassi was later charged on a one count indictment charging that he had knowingly made false material declarations during the Rule 11 proceedings and that those statements and the declarations in his § 2255 affidavit were irreconcilably contradictory.

Stassi pleaded not guilty to the § 1623 charge and elected to proceed non-jury before Judge Stanley S. Brotman.

### III.

Considering the documentary record, the testimony of the government attorney and defense counsel, and all the evidence adduced at the non-jury trial, Judge Brotman found that neither counsel made "promises" concerning appellant's sentence, *United States v. Stassi*, 443 F.Supp. 661, 664 (D.N.J.1977), and that appellant's statements in the § 2255 affidavit were therefore false, *id.* The court also found that although defense counsel had made a prediction as to sentence, the appellant testified at the Rule 11

hearing that no "indications" concerning sentence had been given, *id.* at 663–64. Judge Brotman then determined that appellant's false statements at the Rule 11 proceeding were made voluntarily and knowingly, *id.* at 666, and were believed by the defendant to be false, *id.* at 667; that the declarations in the defendant's affidavit were also made voluntarily and knowingly, *id.* at 666, and were irreconcilably contradictory to his earlier testimony at the Rule 11 proceeding, *id.* at 667; and that all the statements charged in the indictment were material, *id.* at 666, were made under oath, *id.* at 664, and were ancillary to federal court proceedings, *id.* at 665.

■ The test for reviewing fact finding in a non-jury criminal case is the clearly erroneous rule. *United States v. Delerme*, 457 F.2d 156, 159–60 (3d Cir. 1972). Applying the familiar test of *Krasnov v. Dinan*, 465 F.2d 1298, 1302–03 (3d Cir. 1972), we will not disturb those findings.

Nor do we find error in the district court's determination that the statements met the statutory tests of inconsistency and materiality. The importance of guilty pleas cannot be gainsaid. "The plea of guilty is probably the most frequent method of conviction in all jurisdictions; in some localities as many as 95 per cent of the criminal cases are disposed of in this way. The assumption underlying [the ABA Standards, Pleas

1. In November of 1974, I went to the Sixth Floor of the Federal Building in Newark, New Jersey with my attorney, John Russell, Esq. We went there to listen to tapes which the government was going to use at my trial.

2. During the time I was there, Mr. Russell met with Mr. Deichert who was the government attorney in charge of my case and they had a discussion about a plea of guilty by me. After Mr. Russell talked to Mr. Deichert, he told me that if I pleaded guilty I would receive no more than two years in jail. Mr. Deichert then walked towards me and I stated "I want a suspended sentence and no fine." Mr. Deichert stated, "Judge Stern won't go for a suspended sentence but he will agree on the two years."

3. Again on June 2, 1975, the date I was supposed to go on trial, I talked with Mr. Russell and again he told me in the third floor hallway, outside Federal Courtroom No.

1, that if I pleaded guilty, I would get no more than two years. Mr. Deichert also told me that I would get a two-year sentence if I pleaded guilty on June 2, 1975. This was told to me by Mr. Deichert outside Judge Stern's courtroom.

4. At that time. Mr. Russell told me that I should say nothing about the promise that I would receive no more than the two years as my sentence. He told me to say "no promises" when Judge Stern questioned me about promises. I followed Mr. Russell's advice and told Judge Stern that there were no promises when he asked me about promises.

5. I am not guilty of this charge and I was persuaded to say that I was guilty by Mr. Russell's promises that I would get no more than two years and maybe less than two years. I was also persuaded to plead guilty by Mr. Deichert making the same promises to me.

of Guilty] is that conviction without trial will and should continue to be a most frequent means for the disposition of criminal cases. This assumption is not based upon notions of expediency, but rather upon the conclusion that a number of values are served by the disposition of many criminal cases without trial. By his plea, the defendant aids in ensuring the prompt and certain application of correctional measures to him. He also aids in avoiding delay in the disposition of other cases, thereby increasing the probability of prompt and certain application of correctional measures to other offenders."[7]

Experienced judges, state and federal, recognize that the defendant who pleads guilty is often motivated by extremely pragmatic considerations: by throwing himself on the mercy of the court, he generally expects that the ensuing sentence will be less oppressive than one pronounced after a jury verdict following trial. While this expectation is grounded more on empirical data than on jurisprudential principles, the reality is that rewards usually await one who has made a clean breast of his involvement. This, too, is an assumption underlying the ABA Standards: "the plea provides a means by which the defendant may acknowledge his guilt and manifest a willingness to assume responsibility for his conduct."[8]

If in fact there is an expected reward—justified or not—the expectation is conceptualized as something offered or given for some good that is done or for some service rendered. And reduced to its essence, this reward is acceptable to the court as an exchange for receiving the truth from a defendant; the theory obviously being that despite the crime committed by the defendant for which he stands at the bar of justice, his expression of the truth and the concomitant willingness to pay the consequences is a major step toward his social rehabilitation.

Critical to the guilty plea reception, therefore, is the absolute requirement that the defendant respond truthfully to questions put by the court. And should there be a breach of this requirement relating to a material fact, no reason, jurisprudential or philosophical, can logically be advanced why society should not demand or require punishment for a knowing breach of that requirement.

A claim initiated by the defendant under 28 U.S.C. § 2255 is an equally solemn proceeding. It is a claim that the sentencing court imposed a sentence in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. It is not a proceeding to be frivolously initiated or lightly received by the court. Although the governing legal precepts can always be identified by trained members of the legal profession, the factual predicate of a § 2255 motion is indispensable, for it is on the anvil of fact that tempered legal precepts must be forged. Thus the necessity for truth in the allegations accompanying a § 2255 motion is as great as the requirement for truth in the reception of evidence at a trial or at a Rule 11 proceeding. A false material declaration, knowingly made, in a § 2255 affidavit or hearing offends the administration of criminal justice as much as a false material declaration made in any other "proceeding before or ancillary to any court." 18 U.S.C. § 1623.

Conscious of the teachings of the Supreme Court and the standards and safeguards imposed by this court in the plea bargain cases previously discussed in Part I, *supra,* Judge Stern was careful to seek maximum information relating to any possible plea negotiations. The judge was entitled to nothing less than the truth relating to bargains made; anything other than the truth, knowingly stated, either in the recep-

---

7. ABA Standards Relating to the Administration of Criminal Justice, Compilation, pp. 299–300 (1974).

8. ABA Standards, *supra,* at 300.

tion of the plea or in the presentation of the § 2255 motion, "was material to the point in question" and any inconsistency between the statements thereby constituted a violation of 18 U.S.C. § 1623.

The judgment of the district court will be affirmed.