**UNITED STATES of America,
Appellee,**

v.

**Simon HAWTHORNE, Appellant.**

No. 73-2612.

United States Court of Appeals,
Third Circuit.

Argued June 27, 1974.

Decided Sept. 5, 1974.

Robert L. Potter, Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellant.

Richard L. Thornburgh, U.S. Atty., Charles F. Scarlata, Craig R. McKay, Kathleen Kelly Curtin, Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

Before ADAMS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal requires us once again to deal with difficult legal and factual problems relating to post-sentence attempts to withdraw guilty pleas.

1. Rule 11 of the Federal Rules of Criminal Procedure provides in relevant part as follows:

A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept

Simon Hawthorne, appellant, was charged in a two count indictment, filed on May 3, 1973, with selling cocaine in violation of 21 U.S.C. § 841(a)(1). On May 14, 1973, Hawthorne pleaded not guilty to both counts. However, on July 5, 1973, he pleaded guilty at a Rule 11 proceeding [1] to one of the two counts and, at the same time, the United States announced its intention to move to dismiss the other count.

At the Rule 11 proceeding, Hawthorne was asked several questions by the district court and the prosecutor to determine whether, in fact, his plea was being voluntarily entered. Hawthorne's answers to questions concerning his belief, if any, that he would receive leniency apart from dismissal of one of the counts pending against him are not consistent. Hawthorne responded affirmatively to the following question of the Assistant United States Attorney:

> Aside from my representation to dismiss the first count and advise the court of any [sic] of your cooperation have any threats or promises been made to you to enter this plea?

Yet, Hawthorne responded negatively to the following questions of the district court:

> Has anyone promised you that I, as the sentencing judge, would go easy on you?
>
> \*    \*    \*    \*    \*    \*
>
> Other than the fact that the Government has agreed to drop the first count if you plead guilty, has any other promise been made to you to induce you to change your plea from not guilty to guilty?
>
> \*    \*    \*    \*    \*    \*
>
> No one on the side of the government, or your own lawyer, or anyone, has made you any promises?

such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.

Further, in the presence of Hawthorne, the Assistant United States Attorney informed the district court that there had been no plea bargaining "in the sense that we have agreed upon any sentence." Hawthorne's court-appointed counsel agreed with this representation. The court imposed a sentence of 10 years.

One month after the guilty plea proceeding, Hawthorne wrote a *pro se* letter to the district court alleging, in substance, that his guilty plea had been prompted by his attorney's promise to him that he would receive only a five year sentence.[2] Hawthorne requested that he be permitted to withdraw his guilty plea. The district court, without a hearing, rejected the request in a brief opinion, dated November 2, 1973, which relied on Hawthorne's negative responses to the series of questions directed to him by the district court at the guilty plea proceedings.

On November 13, 1973, Hawthorne wrote a second time to the district court, asserting that his answers to the court's questions at the guilty plea hearing were given on the advice of his counsel.[3] On the same day it received the letter, the district court, without a hearing, denied Hawthorne's request for permission to withdraw his guilty plea. Hawthorne thereupon timely filed this appeal.

Here Hawthorne primarily contends that the allegations contained in his two *pro se* letters to the district court were sufficient, under Moorhead v. United States,[4] to preclude the district court's summary denial of the requested relief. In essence, it is Hawthorne's position (1) that his allegations, if taken as true, require the court to allow him to withdraw his guilty plea, (2) that the district court cannot rely solely on his statements at the Rule 11 hearing in dismissing his allegations as untruthful, and (3) that the district court must conduct further proceedings to determine the veracity of his allegations.

■ We share the concern consistently expressed by this Court that statements by a defendant at Rule 11 proceedings should be accorded great weight when such defendant, after sentencing, disavows those statements and requests permission to withdraw his plea. Nevertheless, we must, as this Court has repeatedly done in the past, examine with care the defendant's allegations and the district court's disposition thereof in light of Rule 32(d) and the interpretive gloss placed on that provision.

In *Moorhead,* the district court had conducted a thorough Rule 11 proceeding before accepting the defendant's guilty plea.[5] Moorhead thereafter alleged that his attorneys had misled him at the time of his plea. He claimed that they "assured him there was a 'proposition' "[6] that he would receive a "light sentence" if he chose to plead guilty. Such an allegation, this Court ruled, was "sufficient to require the holding of an adver-

---

**2.** Hawthorne's first letter to the district court read as follows:
I took my attorney's word that if I pled guilty, I would only receive a 5 year sentence. If the court would have asked me at the time of the guilty plea, I would have told the court that my attorney said 5 years is all I would get on this guilty plea. So actually I was lied to by my counsel, and should not be deprived [of] my rights to a trial because of the attorney's promise.

**3.** Hawthorne's second letter read as follows:
[T]he court is right, in my answer to the court as far as Rule 11, but the answers were only given to t'is Honorable Court on the advice of incompetent counsel.

In other words, my attorney told me to answer this way, and I would thus get 5 years instead of the 10 in [sic] which I received from your Honorable Court. When the court asked if I would plead guilty, has any promises been made to induce me to change my plea from not guilty to guilty, and I replied in the negative, this was only on instructions from my attorney and the promise of 5 years.
These were instruction by my incompetent attorney to obtain a 5 year sentence in a change of plea.

**4.** 456 F.2d 992 (3d Cir. 1972).

**5.** *Id.* at 993.

**6.** *Id.* at 994.

sary hearing. . . . ."[7] The Court noted, however, that it was within the district court's discretion to determine the type of proceeding necessary to elicit the relevant facts, and that the defendant's presence was not required in all cases.[8]

Thus, in assessing Hawthorne's assertion that the district court's denial of his request for relief was unduly precipitous, we must decide whether his allegations, if taken as true, might warrant withdrawal of his guilty plea despite the fact that correct Rule 11 proceedings were conducted. Determinations of this sort are not free from difficulties. On several occasions this Court has attempted, in the context of particular factual situations, to strike an acceptable balance between the considerations underlying Rule 11 and those reflected by Rule 32(d) of the Federal Rules of Criminal Procedure. Rule 11 is designed to encourage courts to extract all relevant information concerning the voluntariness of guilty pleas at the hearing. But Rule 32(d) permits withdrawal of a guilty plea after sentence has been imposed when necessary to "correct manifest injustice." The "manifest injustice" clause in Rule 32(d) implicitly acknowledges that, in some circumstances, even meticulous inquiry by the court at a Rule 11 proceeding may not foreclose a defendant's opportunity to withdraw a guilty plea if the interests of justice so dictate. On the other hand, a high degree of finality must be accorded guilty pleas delivered after proper Rule 11 proceedings in order to avoid wholesale withdrawal of pleas when sentences are regarded by the pleaders as too harsh.

Hawthorne relies heavily on United States v. Shneer[9] to support his conten-

tion that his two *pro se* letters alleged facts which, if taken as true, would require the district court to permit him to withdraw his guilty plea. In *Shneer*, the defendant submitted affidavits supporting the motion to withdraw his guilty plea. The district court, after a hearing, denied the motion and this Court affirmed. But, in affirming, we indicated that if the defendant could establish that he pleaded guilty "in reasonable reliance upon misrepresented information [concerning an understanding with the prosecutor regarding the severity of the sentence], limiting the issue to the fact that the misrepresentation, however innocent, was made by the defendant's counsel, an officer of the Court,"[10] he would be entitled to withdraw his plea. Thus, *Shneer* supports the proposition that a guilty plea delivered when there has been misrepresentation by counsel and reasonable reliance thereon constitutes "manifest injustice" under Rule 32(d).[11]

In *Moorhead* itself, this Court appeared to reaffirm this aspect of *Shneer*. We pointed out that if Moorhead established that his counsel told him that a "proposition" for light sentence existed between defense counsel and the prosecutor, "[a] plea induced by such misrepresentations does not meet the federal standards of voluntariness."[12]

In Masciola v. United States,[13] we distinguished the *Moorhead* situation from that where the defendant's counsel merely "predicted" the likely sentence to follow a guilty plea. "Manifest injustice," the Court stated, "does not result from erroneous advice from counsel as to what sentence will be

---

7. *Id.* at 995.

8. *Id.*

9. 194 F.2d 598 (3d Cir. 1952).

10. *Id.* at 600.

11. Hawthorne calls our attention to Mosher v. LaVallee, 351 F.Supp. 1101 (S.D.N.Y. 1972), where the district court held that de-

fense counsel's misrepresentation that the judge had promised a particular sentence rendered the guilty plea involuntary and amounted to a denial of effective representation of counsel.

12. 456 F.2d at 995.

13. 469 F.2d 1057 (3d Cir. 1972).

imposed." [14]  Apparently, under the circumstances of *Masciola,* the defendant could not have reasonably relied on counsel's prediction of the likely sentence in determining whether or not to plead guilty.

That *Masciola* does not undermine the standards for determining manifest injustice set forth in *Shneer* and *Moorhead* was made clear by this Court in Valenciano v. United States.[15]  There we held "that the *Moorhead* rule persists with continuing vitality and that the contrary result reached in *Masciola* was the product of particular facts and limited contentions." [16]  In *Valenciano,* the Court stated that an evidentiary hearing of some type is mandated "[w]here the voluntariness of the plea is attacked with an assertion that one's counsel or the prosecutor, or both, made an out-of-court arrangement or 'proposition' as to the outcome of a sentence which differs from that pronounced by the court. . . ." [17]

█ It would appear, therefore, that under present case law if Hawthorne's *pro se* letters can be read to assert that he reasonably believed that the statements of his counsel meant that arrangements had been made with respect to the length of sentence to be imposed upon a plea of guilty, he must be afforded some type of hearing.  If, on the other hand, counsel's statements, as revealed in Hawthorne's letters, may reasonably be regarded as mere predictions of the future actions of the judge, Hawthorne is not entitled to such hearing.

The analysis and approach of this Court does not significantly undermine the finality of the Rule 11 proceedings. A defendant will not lightly plead guilty in order to determine what sentence he will receive if he so pleads, because his answers to the questions concerning the voluntariness of his plea put to him by the district court would, in most cases, place upon him a heavy burden to establish the veracity of his post-sentence assertions.[18]  This is especially so if the district court follows the suggestions made by this Court in Paradiso v. United States [19] and in United States v. Valenciano.[20]

In *Paradiso* we said (482 F.2d at 413):

> In connection with their rule 11 inquiry on a plea of guilty, district judges should in essence inform the defendant that plea bargaining is specifically approved by the court and that he may truthfully inform the court of any plea negotiations "without the slightest fear of incurring disapproval of the court."  Inquiry should also be made of counsel for the parties as to any plea negotiations. Should inquiry reveal the presence of plea negotiations, counsel for the parties should be required to state plainly the terms of record and the defendant should state of record whether he understands them and concurs.  The court, of course, is not obligated to accept any recommendation or bargain reached by the parties, and it should so inform the defendant when any bargain is disclosed.

We also suggested, in *Valenciano,* (495 F.2d at 587):

> ". . . A showing in the rule 11 plea reception proceeding may, under certain circumstances, obviate a subsequent § 2255 hearing if the plea reception record discloses that (1) the defendant states that no promise, representation, agreement or understanding was made or that none other than that disclosed in open court was made to him by any person prior to the entry of the plea, and (2) the defendant affirmatively states that no out-of-court promise, representation, agree-

---

14.  *Id.* at 1059.

15.  495 F.2d 585 (3d Cir. 1974).

16.  *Id.* at 586.

17.  *Id.* at 587.

18.  *See Id.* at 586.

19.  482 F.2d 409 (3d Cir. 1973).

20.  495 F.2d 585 (3d Cir. 1974).

**1188**

ment or understanding required the defendant to respond untruthfully or contrary to the terms thereof in the in-court plea reception proceedings, and (3) that the defendant understands that he may not at a later time contend that any promise, representation, agreement or understanding was made by any person other than that set forth in open court. While such disclaimers may not obviate the necessity of subsequent § 2255 evidentiary hearings in all cases, it may be prudent for defense counsel, prosecutor, or the court to elicit such disclaimers from the defendant at the time of the reception of the guilt plea. . . . "

Considering the increasing number of applications for withdrawal of guilty pleas predicated on "promises," "representations," "predications" and the like, allegedly made by defense counsel to defendants, it now becomes apparent that what we may have once considered merely an advisable measure for Rule 11 proceedings has now become imperative. We believe that the district courts should place defendants under oath for the Rule 11 proceedings, and that the *Paradiso* and *Valenciano* advice and disclaimers should be included as well.

While we recognize that such disclaimers, even under oath, may not obviate the necessity of subsequent § 2255 evidentiary hearings, they may furnish a basis for an independent proceeding against the defendant who answers the court's inquiries under oath and later attempts to withdraw his plea, claiming that the answers previously given were untrue.

But Hawthorne's *pro se* letters present a different type of problem. To ferret for the substance of Hawthorne's assertions concerning counsel would appear fruitless, for Hawthorne's allegations are "inartfully pleaded." We should, however, not hold Hawthorne to the same standards that would be ap-

plied to a defendant who, at the time he petitions a court for relief, is adequately represented by counsel.[21] Hawthorne essentially claims that his counsel "promised" him that he would receive a five year sentence, rather than the ten year sentence that was imposed. Two inferences, conflicting in terms of the rule of law we must apply, seem equally plausible. Hawthorne may have understood that counsel's "promise" was based on his experience in criminal matters, on his knowledge of the tendencies of the sentencing judge, or on any of a number of other factors unrelated to any putative agreement with the prosecutor. Conversely, the statements constituting counsel's "promise" may well have been reasonably construed by Hawthorne as indicating that an agreement with respect to sentence had been reached.

■ Since Hawthorne is now represented by different counsel, it would appear appropriate under the peculiar circumstances of this case—the equivocal and inartful nature of the applicant's submissions—that he be given an opportunity to offer a fuller exposition of the statements made to him by original counsel prior to sentencing. At oral argument, Hawthorne's new counsel, in fact, suggested that such procedure would be acceptable. We agree that on the record before it, the district court did not err in refusing to grant an evidentiary hearing. We do not require that an evidentiary hearing in this context be held unless and until good cause within the principles of *Moorhead, supra,* has been established by affidavits.

Affidavits supporting Hawthorne's assertions in his *pro se* letters may well suffice to give the district court an understanding of the precise nature of Hawthorne's allegations. After submission of the affidavits, the district court should be in a better position to judge whether a further hearing is called for.

21. *See* Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Accordingly, the judgment of the district court will be vacated and the case remanded for proceedings consistent with this opinion.[22]

22. Although not directly before us on this appeal, appellant (through his new counsel) has brought to our attention an issue concerning the special parole portion of his sentence, which may be inconsistent with recent decisions of this Court. If raised before the district court, we suggest that the district court consider the applicability of Roberts v. United States, 491 F.2d 1236 (3d Cir. 1974).