**UNITED STATES of America, Plaintiff,**

v.

**James L. STASSI, Defendant.**

**Crim. No. 77–00077.**

United States District Court,
D. New Jersey.

Dec. 19, 1977.

Robert J. Del Tufo, U. S. Atty., Charles A. Matison, Sp. Atty., U. S. Dept. of Justice, Newark, N. J., for plaintiff.

Stephen Robert LaCheen, Philadelphia, Pa., for defendant.

## OPINION

BROTMAN, District Judge.

The defendant, James L. Stassi, was indicted by the Grand Jury for making false material declarations under oath in violation of 18 U.S.C. § 1623. The indictment charges that on June 2, 1975, the defendant, while under oath as a witness before a United States District Court, did knowingly make false material declarations while under questioning by the court at a guilty plea hearing held pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

Q. Mr. Stassi, your lawyer says that you want to plead guilty to Count I of this indictment. Is that so?

A. Yes.

Q. Now, as I have told you or as you have heard, this is a crime punishable by up to five years' imprisonment or $10,000 in fines or both. Did you know that?

A. Yes, sir.

Q. Now, has anybody given you any indication or promise that if you plead guilty here today I would impose anything less than the maximum sentence upon you?

A. There was no promise made of any sort.

Q. Anybody give you any indication as to what my sentence might be?

A. No. There is no indication of any sentencing.

Q. I tell you this, Mr. Stassi. I have never discussed your case with anyone. As I sit here now I don't know what sentence I would give you and will not know until I have seen a presentence report. I tell you, further, that if anyone has given you any indication of what sentence I would give you if you plead guilty here today they are lying to you and deceiving you. Do you understand me?

A. Yes, sir.

Q. Do you believe me?

A. I believe you.

Q. I tell you now that if anyone has given you any such promise or indication, tell me now and I will listen to you. But if you wait until after I pronounce sentence and if then you are dissatisfied with my sentence and try to tell me of some promise or indication or inducement, I won't listen to you then. Do you understand me?

A. Yes, sir.

Q. Do you have anything to tell me in this regard?

A. No.

The indictment further alleges that on June 22, 1976, while under oath in an affidavit filed with the same United States District Court the defendant did knowingly declare the following:

1. In November of 1974, I went to the Sixth Floor of the Federal Building in Newark, New Jersey, with my attorney, John Russell, Esq. We went there to listen to tapes which the government was going to use at my trial.

2. During the time I was there, Mr. Russell met with Mr. Deichert who was the government attorney in charge of my case and they had a discussion about a plea of guilty by me. After Mr. Russell talked to Mr. Deichert, he told me that if I pleaded guilty I would receive no more than two years in jail. Mr. Deichert then walked towards me and I stated "I want a suspended sentence and no fine." Mr. Deichert stated, "Judge Stern won't go for a suspended sentence but he will agree on the two years."

3. Again on June 2, 1975, the date I was supposed to go to trial, I talked with Mr. Russell and again he told me in the third floor hallway, outside Federal Courtroom No. 1, that if I pleaded guilty, I would get no more than two years. Mr. Deichert also told me that I would get a two-year sentence if I pleaded guilty on June 2, 1975. This was told to me by Mr. Deichert outside Judge Stern's courtroom.

4. At that time, Mr. Russell told me that I should say nothing about the promise

that I would receive no more than two years as my sentence. He told me to say "no promises" when Judge Stern questioned me about promises. I followed Mr. Russell's advice and told Judge Stern that there were no promises when he asked me about promises.

5. I am not guilty of this charge and I was persuaded to say that I was guilty by Mr. Russell's promises that I would get no more than two years and maybe less than two years. I was also persuaded to plead guilty by Mr. Deichert making the same promises to me.

The indictment concludes that the two declarations were inconsistent to the degree that one of said declarations was necessarily false and known to the defendant to be false when made.

Prior to trial both the government and the defendant waived a jury trial. After considering the evidence adduced at the trial on October 11 and 12, 1977, and the arguments and briefs of counsel, the court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. The defendant, James L. Stassi, pleaded guilty to one count of an indictment alleging conspiracy to sell illegal firearms, 18 U.S.C. § 922(a)(1) and 18 U.S.C. § 371, in return for dismissal of the other count alleging the sale of firearms, 18 U.S.C. § 922(a)(1).

2. The Assistant U. S. Attorney, James M. Deichert, never made any agreement, promise, or prediction to the defendant or his counsel concerning the length of sentence which might be imposed if defendant pleaded guilty.[1]

3. John P. Russell, attorney for the defendant at the Rule 11 proceeding, never promised the defendant that, as a result of a plea bargain, he would definitely receive

no more than two (2) years' imprisonment if he pleaded guilty. Instead, Mr. Russell, based on his experience as an attorney, predicted to the defendant that he could expect to receive a two (2) year prison term on his plea of guilty.

4. While under oath before the Honorable Herbert J. Stern during a Rule 11 proceeding on June 2, 1975, the defendant, James L. Stassi, knowingly and voluntarily testified that there were no promises regarding sentence made to him to induce him to plead guilty.

5. While under oath, defendant James L. Stassi, in an affidavit based on information supplied by himself (for the purposes of withdrawing his guilty plea pursuant to 28 U.S.C. § 2255), knowingly and voluntarily represented to the Honorable Herbert J. Stern that the defendant had been promised a two (2) year maximum sentence by the prosecuting attorney, James M. Deichert, and by the defendant's attorney, John P. Russell, in return for his plea of guilty.

6. Ralph Reish, case manager at the United States Federal Penitentiary, Lewisburg, Pennsylvania, identified his own signature and that of the defendant as those appearing on the defendant's affidavit of July 22, 1976.

7. The affidavit indicates that Mr. Reish administered an oath to the defendant.

### Conclusions of Law

I. *The Applicability of § 1623 to the Present Proceeding*

This case presents, to the court's knowledge, one of the first prosecutions under 18 U.S.C. § 1623 for allegedly making false material declarations under oath in a guilty plea proceeding under Rule 11 and a subsequent motion to vacate the plea under 28 U.S.C. § 2255. *See Tasby v. United States,* 504 F.2d 332 (8th Cir. 1974).[2] However, the

---

1. An examination of the testimony of Mr. John P. Russell reveals several statements which appear to contradict the assertions of Mr. James M. Deichert regarding conversations about the defendant's sentencing. The court questioned Mr. Russell about these possible conflicts and

now finds, as a matter of credibility, that Mr. Russell's later testimony cured any possible contradiction with the testimony of Mr. Deichert.

2. In *Tasby* the prosecution rested on testimony

potential for such prosecution has been the subject of judicial discussion in this circuit. *See United States v. Hawthorne*, 502 F.2d 1183, 1188 (3rd Cir. 1974).

■ The defendant has vigorously asserted at every stage of the prosecution that § 1623 was designed solely for use in the Grand Jury context and has been improperly employed in the present setting. However, as was stated in the court's bench opinion of May 20, 1977, which denied defendant's motion to dismiss the indictment, the argument seeking to limit the scope of § 1623 is not persuasive. The plain wording of the statute is more expansive than defendant's interpretation suggests:

> Whoever under oath . . . in any proceedings before or ancillary to any court or Grand Jury in the United States knowingly makes any false material declaration [is guilty of a § 1623 offense]. 18 U.S.C. § 1623 (1970).

Moreover, the legislative history does not indicate an intent on the part of Congress to limit the statute's scope. *See generally* 1970 U.S.Code Cong. & Admin.News at 4024; S.Rep.No.91–617, 91st Cong., 1st Sess. 57–59. Indeed the correspondence between Assistant Attorney General Will Wilson and Senator McClellan supports a broad interpretation of the phrase "proceedings before or ancillary to any court or grand jury." *See* Hearings on S. 30, 974, 976, 1623, 1624, 1861, 2022, 2122 and 2292 Before the Subcommittee on Criminal Law and Procedures, Committee on the Judiciary, 91st Cong., 1st Sess. 15, 372, 379–80, 490, 410–11. Nor does the October 1976 amendment to § 1623, placing unsworn declarations within the purview of the statute, indicate that sworn affidavits had been excluded prior to that date. *See* 1976 Code Cong. & Admin. News 5644; Pub.L. 94–550 (1976).

II. *The Recantation Provision of § 1623(d)*

The court does not agree with the contention of the defendant that the district judge erred in not warning the defendant of his

right to recant under the provisions of § 1623(d) and *United States v. Lardieri (Lardieri I)*, 497 F.2d 317, *rehearing (Lardieri II)*, 506 F.2d 319 (3rd Cir. 1974). Subsection (d) of the statute allows a witness in an ongoing court proceeding to admit to making a false declaration without, under certain circumstances, the possibility of undergoing subsequent prosecution. In *Lardieri II* the Third Circuit concluded that the legislative history of subsection (d) did not mandate a recantation warning. Nor was that court persuaded that fundamental fairness to an accused, incorporated in the doctrine of due process, required a prosecutor to warn a grand jury witness of his right to recant. 506 F.2d at 323–24.

■ This court does not find that a duty exists on the part of a district judge to warn a potential defendant about the recantation provisions of § 1623(d). *See Lardieri II, supra.* Moreover, under the circumstances in this case neither the prosecutor nor the judge had the opportunity to warn the defendant about his sub-section (d) right. The allegedly inconsistent statements did not take place at the same proceeding or even in a setting in which a warning would have been possible. The irreconcilably inconsistent statement of July 22, 1976, was supplied in a sworn affidavit rather than in continuous courtroom testimony. Under the circumstances it is clear that there was no duty to warn the defendant about his right of recantation or his Fifth Amendment privilege to remain silent. *Lardieri II, supra* at 324; *United States v. Di Michele*, 375 F.2d 959 (3rd Cir. 1967).

■ Even if the district judge had been under some duty to apprise the defendant about his perilous situation, the court believes that such duty was discharged. Judge Stern did issue a warning to the defendant's newly-appointed attorney (the Federal Public Defender) at the retention of counsel hearing on May 20, 1976, following defendant's pro se motion to vacate

in two subsequent court proceedings. This case appears to be the first case in which a

sworn § 2255 affidavit has been used for the purposes of a § 1623 prosecution.

under 28 U.S.C. § 2255. This colloquy took place:

The Court: Finally, I do not know what the defendant intends to do here but I remind you as his counsel that he was under oath at the time of the Rule 11 proceeding and if he wants to testify here he will have to be under oath here.

I say this not by way of threat whatsoever, but only in fairness so that your client, up to this point proceeding without the benefit of counsel, can make informed choices as to what he wants to do. Do you take my meaning?

Mr. Lowenstein: I certainly do, Judge.

In terms of fundamental fairness it is clear that this warning should have put the defendant on notice of the implications of any further statements under oath which would contradict the defendant's testimony of June 11, 1975.[3]

III. *The Government's Burden of Proof*

■ Despite the modifications and simplifications resulting from the adoption of 18 U.S.C. § 1623,[4] the government still retains the burden of proving knowledge, falsity and materiality of the statement or statements in question beyond a reasonable doubt. 1970 Code Cong. & Admin.News 4024; *United States v. Slawik,* 548 F.2d 75, 87 (3rd Cir. 1977).

■ There is little question that the government has met the requirements of materiality and knowledge. The materiali-

ty argument was discussed in the court's bench opinion of May 20, 1977, and needs little repetition here. The government has introduced the transcript of June 11, 1975, and the affidavit of July 22, 1976. Both statements were essential to the court's resolution of the proceedings in question and were clearly material. *Cf. United States v. Mancuso,* 485 F.2d 275, 280–81 (5 Cir. 1973); *Tasby, supra* at 337.

■ The defendant, citing *Lardieri I, supra* at 320, argues that he cannot be convicted because the statements of June, 1975 and July, 1976 were not knowingly false. However, the mens rea element of "knowingly" does not apply to whether the statements were false but rather to how they were made. *Lardieri I, supra* at 320; *Slawik, supra* at 87; 1970 Code Cong. & Admin.News 4023. The requirement dictates that only knowing, intentional or voluntary (as opposed to inadvertent or accidental) statements be the subject of prosecution. The knowledge requirement is met here as to both statements.[5]

■ In addition to knowledge and materiality, the government must show falsity. Defendant argues convincingly that the government has not proved beyond a reasonable doubt that the defendant knew that the June 22, 1976 affidavit was false when it was signed and sworn to. The court agrees. Indeed, the government's burden in this situation is greater than even the defendant suggests. Once a defendant

---

3. The propriety of the Federal Public Defender's role in the filing of a contradictory affidavit in view of this warning was raised by the court at the trial on October 11, 1977. Counsel for the defendant chose not to pursue this aspect of the case.

4. This section was adopted explicitly to expedite perjury convictions without the burdensome requirements of § 1621 such as the two witness rule. *See Lardieri II, supra,* at 322–24; S.Rep.No.91–617, 91st Cong., 1st Sess. 57–59, 149–50 (1969); 1970 Code Cong. & Admin. News 4023.

5. The defendant argues that he has been subject to plea negotiations involving himself and his defense attorney, Mr. Russell, on previous occasions. The court interprets defendant's argument as stating that the practice, prior to *Santobello v. N. Y.,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) and the 1975 Amend-

ment to Rule 11, of routinely lying under oath at Rule 11 colloquies is sufficient to render the June 11, 1975, statement involuntary and therefore not subject to prosecution. The court does not agree. While there must be a certain amount of understanding for defendants who engaged in this practice, *see e. g., Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), this particular proceeding was conducted after the Third Circuit's decision in *United States v. Hawthorne,* 502 F.2d 1183 (3rd Cir. 1974). *Hawthorne* established procedures designed to avoid concealment and lying in Rule 11 proceedings. In *United States v. Stassi,* (3rd Cir., filed June 27, 1977) (unpublished opinion), the court determined that "the district court, before accepting Stassi's plea, followed precisely the guidelines delineated in *Hawthorne* for conducting a Rule 11 proceeding."

raises the affirmative defense of his belief in the truth of a statement, the burden is on the government to disprove this belief beyond a reasonable doubt. 1970 Code Cong. & Admin.News 4023. However, success on this issue does not serve to exonerate the defendant from the charges against him. Under § 1623(c), the government may prove that one of the statements was necessarily false merely by introducing two irreconcilably contradictory declarations to the point in question. *Id.* The defendant in the two-statement situation must then demonstrate or at least raise the issue that he believed *each declaration* to have been true at the time it was made. *Id.; Slawik, supra* at 87. While the defendant has sufficiently demonstrated his belief in the veracity of the July 22, 1976 statement, he has not presented any evidence toward his belief that the June 2, 1975 declarations were true when they were made. Indeed the argument defendant puts forward which tends to show his belief in the veracity of the latter statement also demonstrates the defendant's belief in the *falsity* of the former declarations.

IV. *Conclusion*

The government has carried its burden of proving the knowledge, falsity and materiality of the two statements beyond a reasonable doubt. The defendant is guilty as charged.