Eugene PERRY, Petitioner,

v.

UNITED STATES of America, Respondent.

Crim. Nos. 75–331, 75–459 and 75–463.

United States District Court,
D. New Jersey.

May 28, 1981.

As Amended June 16, 1981.

Eugene Perry, pro se.

William W. Robertson, U. S. Atty. by Barry Ted Moskowitz, Asst. U. S. Atty., Newark, N. J., for respondent.

## OPINION

MEANOR, District Judge.

On October 7, 1975, the petitioner Eugene Perry appeared before this court as a criminal defendant and entered guilty pleas to four counts of bank robbery in violation of Title 18, United States Code sections 2113(a) and (d).[1] Petitioner now seeks to have this court vacate his sentences on the grounds that the "plea of guilty . . . was unlawfully induced or not made voluntarily" and the "[d]enial of effective assistance of Counsel." Petition at 4. For the reasons set forth below, I will, without an evidentiary hearing, deny the petition.

> [T]o require a hearing in this case means "that the number of hearings held on motions under Section 2255 would be limited only by the imagination and ingenuity of the prisoners involved." An ingenious prisoner can deliberately bait his application with claims beyond independent proof and then demand that he be brought to court to tell the story known only to him, no matter how inconsistent and incredible it may be in light of the files and records.

*Machibroda v. United States*, 368 U.S. 487, 500, 82 S.Ct. 510, 516, 7 L.Ed.2d 473 (1962) (Clark, J., dissenting).

When the defendant came before me at the Rule 11 hearing, Fed.R.Crim.P. 11, he was facing three separate bank robbery indictments. Indictment No. 75–331 charged

---

**1.** Throughout this opinion, references to the transcript of the Rule 11 proceeding, held on October 7, 1975, are designated by "Tr.".

the defendant and Hillard McQueen in three counts with the armed bank robbery of the Union City Savings and Loan Association on July 2, 1975. Information No. 75–459 charged the defendant in two counts with the armed robbery of the Howard Savings Bank on October 29, 1974 (Count One) and the Essex County State Bank (Count Two) on December 4, 1974. Criminal No. 75–463 was a Rule 20 transfer of District of South Carolina Indictment No. 75–105, charging the defendant and two others with the armed robbery of the Lexington State Bank on November 15, 1974.

Pursuant to a plea agreement, the defendant agreed to plead in Criminal No. 75–463 (Rule 20 from South Carolina), Counts One and Two of Criminal No. 75–459 (Howard Savings Bank and Essex County State Bank) and Count One of Criminal No. 75–331 (Union City Savings and Loan Association). In return, the United States agreed to dismiss Counts Two and Three of Criminal No. 75–331, "stand moot" [*sic*] at sentencing except to correct any factual misrepresentations and to contact the Essex County Prosecutor and request that he dismiss an Essex County indictment returned against the defendant for the Howard Savings Bank robbery set forth in Criminal No. 75–459. Of course, the exact details of the agreement will be discussed in more detail below.

On November 24, 1975, this court sentenced the defendant to twenty-five years in prison.[2] I structured the sentence in the following manner: twenty-five years on Criminal No. 75–463; twenty years on Criminal No. 75–331 concurrent with the sentence on Criminal No. 75–463; and twenty years on each Count of Criminal No. 75–459 concurrent with each other and with the sentences in Criminal Nos. 75–463 and 75–331.

In a handwritten letter dated March 4, 1976, the petitioner explained to the court in great detail the various transformations that he had undergone since his incarceration. The upshot of this eight page letter was a request "of the Honorable Court to consider granting me a reduction of my sentence." Shortly thereafter, in a typewritten letter dated March 16, 1976, and received by the Court Clerk on March 29, 1976, the defendant indicated that "the effects of this sentence might stunt the inspiration of positive thinking for me in here or out in society. Also it is a known fact that association brings on similarity. I believe that it is in the best interest of society for me to incorporate such positive propensity than for to have to deal with uncouthness, which may corrupt my tendency nine (9) to ten (10) years from now." I am compelled to highlight the fact that in this correspondence to the court, totaling eleven single spaced pages, no mention whatsoever is made of the alleged promise of the prosecutor that the defendant would receive any sentence other than that received. On August 9, 1976, I denied the defendant's motion for reduction of sentence.

Perry now petitions this court pursuant to 28 U.S.C. § 2255 to vacate his sentence and guilty pleas, contending that he was promised he would only receive a fifteen year sentence. In particular, the petitioner writes:

2. On April 6, 1981, the petitioner filed a supplement to his previously filed petition. In this supplement, he contended that "[t]he record leaves no doubt that there was substantial doubt and uncertainty surrounding the plea and sentence on Indictment # 75–463. A review of the Sentencing Transcripts will also show that there was considerable doubt and uncertainty enveloping the other substantial Indictments and Government Informations." Supplement Petition at 2. This contention is devoid of any merit whatsoever. Initially, I note that the petitioner has not cited the court to any particular page reference in the transcript of the sentencing to support his assertion of "doubt and uncertainty." However, my review of the entire transcript reassures me that all aspects of the plea and sentencing were clearly and adequately explained to the petitioner. The petitioner was fully aware of the nature of the proceedings and the gravity of the situation. Accordingly, I find this assertion without merit.

Petitioner contends that after negotiations with the prosecutor, to which he was promised that the pending State charges would be dismissed and that petitioner would receive a 15 year sentence, petitioner withdraw [sic] his original plead [sic] of not guilty to a plead [sic] of guilty.

When petitioner appeared for sentencing on 11–24–75, he was sentenced to twenty-five years, something that was not in the plea agreement at the time of petitioner's withdrawal of his not guilty plea. Petitioner' [sic] decision to plead guilty was induced to a significant degree by the prosecutor's promise which was later broken. A conviction under such circumstances violates due process.

Brief in Support of Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2255, at 1. Petitioner also contends that his counsel did not provide him with effective legal assistance. Specifically, he explains:

Here in the instant case petitioner hardly ever saw his court appointed attorney except for the times that his attorney wanted to discuss a guilty plead [sic]. It isn't enough to assume that counsel thus precipitated [sic] in this case and thought there was no defense, and exercised his best judgement [sic] by proceeding to trial without any preparation. Neither he nor the court could say that a prompt and thorough going investigation might disclose as to the facts. His only advice to petitioner was that petitioner plead guilty to said charges, or face the possibility of "eighty five (85) years if found guilty.["]

*Id.* at 4. As a final argument, petitioner asserts that "[s]ince all of the charges of each individual indictment arose out of two single bank robberies, petitioner claims that the multiple sentences constituted an impermissible 'pyramiding' of sentence in violation of the principle of *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), even though in each indictment, the counts were run concurrently with each other." Brief, *supra* at 5.

### Guilty Pleas

The resolution of this aspect of petitioner's present application to the Court is eased greatly by a detailed examination of the record of the Rule 11 hearing and the various affidavits filed by the government in opposition to the petition. After the defendant had read a copy of the indictments and information, they had been read to the defendant, the defendant had indicated his understanding, entered his pleas and been informed of the panoply of constitutional rights he was waiving, Tr. 17 to 24–1, the colloquy between the defendant, who was under oath, Tr. 3–14, and the court was in pertinent part as follows:

[THE COURT] Q You enter these pleas of guilty voluntarily, that is, of your own free will?

[DEFENDANT] A Yes.

Q Have any threats of any kind from anyone been made to you to enter these pleas?

A No.

Q Other than the promises that we spoke about before, the government not speaking at your sentence, Counts II and III of 75–331 to be dismissed, and a request by the government to dismiss the pending armed robbery indictment against you in Essex County, which duplicates Count I of the Information, any other promises been made to you to get you to enter these pleas of guilty?

A No.

Tr. 25–2 to –15.

The defendant then engaged in a detailed factual explanation of the manner in which he robbed the various banks. During this exchange, the defendant, under oath, confessed to his wrongdoings.

[THE COURT] Q Now, Mr. Perry, I cannot take a plea from you unless you, in fact, admit your guilt of the charges to which you are pleading guilty.

You'll have to tell me some details as to how you are involved in each of these escapades of bank robbery.

We'll start with Count I of Indictment 75–331, which charges that you and Hillard McQueen on July 2, 1975 did rob the Union City Savings and Loan Association in Union City of approximately $17,000.

Tell me what happened that makes you guilty of this offense as charged.

[DEFENDANT] A I went into Union City Bank Association in Union City, on approximately the date of July 2nd, 1975. At that time I pulled the revolver, announced a hold up—pardon me—at that time I went in, announced a hold up, pulled the revolver, held it up in the air, not pointing but up in the air so everyone observed me, and put it back in my pocket, and confiscated $17,000, approximately.

.    .    .    .    .

Q What did you do with the money?
THE DEFENDANT: The money was turned over to the arresting officers.

THE COURT: All of it?

THE DEFENDANT: Yes.

MR. HORN [Prosecuting attorney]: Mr. McQueen and Mr. Perry were apprehended as they left the bank.

Tr. 25–16 to 26–18. With respect to the bank robbery charged in Criminal No. 75–459, an Information charging petitioner with the robbery of the Howard Savings Bank, Springfield Ave., Newark, petitioner in open court confessed:

[DEFENDANT] A On the date of the 10th month, 29th day, 1974, Howard Savings Bank. I went in, vaulted over the counter and took money from the drawers, came back and left.

[THE COURT] Q How much did you get?
A Approximately $4,600.

.    .    .    .    .

Q Did you threaten anybody when you went into the Howard Savings on Springfield Avenue, did you say anything? Did you have a gun, exhibit a gun, or anything like that?
A I had a gun, but I just vaulted over. No threats.

Q Had it in your hand so it was visible?
A It was visible.

Q Did you say anything to anybody when you went in there and grabbed the money and ran out?
A No.

Q Did people back away from you?
A Yes.

Q Gun was visible in your hand?
A Yes.

Tr. 26–25 to 27–25. As to Count Two of the Information, petitioner also confessed to the offense charged.

[DEFENDANT] A On the date of the 12th month, 4th day, 1974, I went into the bank of Essex County, State Bank in West Orange, New Jersey, vaulted over the counter. Gun was visible.

[THE COURT] Q In your hand?
A Yes, and confiscated the amount of $12,241.

Q Did you scoop this money up yourself?
A I was assisted.
Q By whom?
A By the clerk behind the counter.
Q In other words, seeing the gun you ordered the clerk to give you some money, right?
A No, I think she naturally assumed it.

.    .    .    .    .

Q The gun was visible?

A Yes.

Tr. 28–7 to 29–2. Finally, with respect to the offense charged in the District of South Carolina Indictment, the petitioner detailed the manner by which he robbed that bank.

[DEFENDANT] A On the 11th month, 15th day, 1974, I went into the Lexington State Bank in Cayce, South Carolina ... Entered with a weapon, revolver, pardon me, automatic weapon.

[THE COURT] Q Pistol?

A Yes. Announced a hold up, held the pistol on the customers until the money was confiscated, and left.

Q You picked up this amount of money, around $14,000?

A $14,000.

Q What happened to that money?

A That money I used in order to start—try to start a business.

Q It's all gone?

A Yes.

Q And you had a gun or pistol, automatic pistol visible in your hand when you robbed the Lexington State Bank?

A Yes.

.     .     .     .     .

Q You held this on the customer until the money was confiscated, and you left?

A Yes.

Tr. 29–14 to 30–13.

Following the petitioner's admissions of guilt, I explained to him the penalties that he faced if the guilty pleas were accepted. Tr. 30–16 to 31–14. The verbal exchange which then took place is most revealing.

[THE COURT] Q You understand that on the charges to which you pleaded today you face total incarcertaion [sic] of a period of up to eighty-five years, and you face potential fines of up to twenty-

five thousand dollars? Is that clear to you?

[DEFENDANT] A Yes.

Q Mr. Perry, has anyone given you any promises or indications as to what your sentence is supposed to be?

A No.

Q Mr. Perry, you recognize you are under oath at the present time, do you not?

A Yes.

Q You understand, Mr. Perry, occasionally we get a defendant who denies at the time of pleading under oath any promises, or any indication made to him as to what his sentence is going to be, having been sentenced, that defendant comes back and files a petition for reduction, or modification of sentence on the ground that he in fact had a promise or indication as to a more lenient sentence then he actually got.

You understand me so far?

A Yes.

Q If you have any such promise or indication, and you don't tell me about it today, but you come back and make such a contention later to get your sentence reduced, you understand you could face a charge of perjury based upon your denial of such a promise today, combined with your later assertion of the existence of that.

Do you understand me?

A Yes.

Q I want you to also know, Mr. Perry, that if in this proceeding today you change your testimony, and admit the existence of such a promise, if one exists, then your change of testimony would not lead, could not lead to any charges of perjury against you.

Do you understand me?

A Yes.

Q Under all these circumstances, do you have any promise or indication as to what your sentence is supposed to be?

A None, other than already prepared to the Court.

Q That is the government will not speak at your sentencing?

A Yes.

Q Counts II and III of 75–331 will be dismissed, right?

A Yes.

Q The government asked the County Prosecutor to dismiss the outstanding indictment, which duplicates the count of the Information. No other promise has been made to you, and strictly with regard to your sentencing, any promises, except the government's promise to remain silent at the time of your sentencing, been made to you?

A None.

· · · ·

THE COURT: Mr. Baxter [defendant's attorney], you have been through this with this young man. Do you recommend acceptance of these four pleas of guilty?

MR. BAXTER: Yes, I do, your Honor.

· · · ·

THE COURT: ... You understand, Mr. Perry, there will be a custodial term imposed upon you?

THE DEFENDANT: Yes.

THE COURT: You expect that, don't you?

THE DEFENDANT: Yes.

THE COURT: You expected it all along if you decided to plead guilty?

THE DEFENDANT: Yes.

THE COURT: The only thing you don't know is how long this will be?

THE DEFENDANT: True.

Tr. 31–19 to 33–23, 35–3 to –13.

In *United States v. Valenciano*, 495 F.2d 585 (3d Cir. 1974), and *United States v. Hawthorne*, 502 F.2d 1183 (3d Cir. 1974), the Third Circuit has taught:

Where the voluntariness of the plea is attacked with an assertion that one's counsel or the prosecutor, or both, made an out-of-court arrangement or "proposition" as to the outcome of a sentence which differs from that pronounced by the court, an evidentiary hearing will ordinarily be necessary on a § 2255 motion attacking the voluntariness of the plea. A showing in the Rule 11 plea reception proceeding may, under certain circumstances, obviate a subsequent § 2255 hearing if the plea reception record discloses that (1) the defendant states that no promise, representation, agreement or understanding was made or that none other than that disclosed in open court was made to him by any person prior to the entry of the plea, and (2) the defendant affirmatively states that no out-of-court promise, representation, agreement or understanding required the defendant to respond untruthfully or contrary to the terms thereof in the in-court plea reception proceedings, and (3) that the defendant understands that he may not at a later time contend that any promise, representation, agreement or understanding was made by any person other than that set forth in open court. While such disclaimers may not obviate the necessity of subsequent § 2255 evidentiary hearings in all cases, it may be prudent for defense counsel, prosecutor, or the court to elicit such disclaimers from the defendant at the time of the reception of the guilty plea.

495 F.2d at 587–588; 502 F.2d at 1187–1188. Like the belief espoused by Chief Judge Lord in *United States v. Sicenavage*, 496 F.Supp. 121 (E.D.Pa.1980), I also "refuse to conclude that this court of appeals demands futility." *Id.* at 123. A review of this record, *supra*, as well as the government's affidavits submitted in opposition to the petition, clearly reveals that the petitioner's present averments are totally without foundation. *United States v. Hawthorne, supra*, 502 F.2d at 1188. It is a plague on the criminal justice system which now requires this court to reluctantly contribute to " 'the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions....' " *United States v. Carter*,

619 F.2d 293, 297 (3d Cir. 1980) (quoting *McCarthy v. United States*, 394 U.S. 459, 472, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1960)).

■ The affidavits submitted by the government from the petitioner's former attorney reveals that the attorney in no way made any indication that the sentence would be one other than that imposed by the court in the exercise of its judgment. Baxter Affd. paras. 4 to 6, at 2. This affidavit is buttressed by the sworn statement of the prosecuting attorney that he did not make the promise which the petitioner alleges was made. Horn Affd. para. 5.[3]

I recognize that these two affidavits directly contradict the affidavit of the petitioner, wherein he avers that he had been promised a fifteen year sentence. However, this divergence of position is of no moment since I totally discredit the petitioner's affidavit.[4] As in *United States v. Sicenavage, supra,* a case remarkably similar to the instant matter, there is compelling evidence in the record presently before the court that petitioner was never promised a fifteen year sentence. As mentioned above, on two occasions in the past, the petitioner sent lengthy and impassioned letters to the court requesting a reduction of his sentence. Nowhere in either letter is there the slightest hint that the petitioner was assured of a lesser sentence than that imposed. Like Chief Judge Lord, I find it incredible that if such a promise had in fact been made, it would nevertheless go unmentioned in the rather articulate letters seeking reduction of sentence. The petitioner's present contention is palpably a *six* year afterthought. Accordingly, I conclude that there was no promise of a lesser sentence and, thus, the plea was knowing and voluntary.

I am compelled, however, to make some additional statements concerning the total disregard of this petitioner for the sanctity of his oath and, more importantly, the integrity of the truth finding process of a United States District Court. It is beyond cavil that the two declarations of the petitioner, *i. e.,* his statements under oath during the Rule 11 proceeding and his sworn affidavit in support of his section 2255 petition, are so inconsistent that one of the declarations is necessarily false and must have been known to the petitioner to be false when made. It must be conveyed to the criminal element in society that wrongdoing, wherever done, will not be sanctioned. It will be punished. Therefore, I most strongly recommend that the United States Attorney evaluate petitions of this type for possible violations of 18 U.S.C. § 1623. *See United States v. Stassi,* 443 F.Supp. 661 (D.N.J.1977), *aff'd,* 583 F.2d 122

---

**3.** In fact, Mr. Horn indicated that:

> [t]he allegation that I held forth a promise of a 15 year sentence to Mr. Perry is false. I never promised to Mr. Perry what sentence he would receive. My procedure in this case, as in every other case I handled, was to plea bargain only as to counts and maximum exposure. I did not plea bargain as to what sentence a defendant would receive.

Horn Affd. para. 5.

**4.** I also reject the assertion by the petitioner in his supplemental petition, see n.1 *supra,* that the pleas in this case were illegal because the government failed to fulfill its end of the plea bargain. First, the petitioner contends that "the record shows" that the court did not dismiss Counts Two and Three of Criminal No. 75–331. However, the court's file reveals that an order dismissing Counts Two and Three of Indictment No. 75–331 was entered on November 24, 1975. Supplement Petition at 2. The order indicates that the two counts were dismissed "for the reason that the defendant plead guilty on 10/7/75 before Judge H. Curtis Meanor to Count *I* of Cr. *75–331* and has been sentenced on same." Second, the petitioner states that "one (1) year after the plea agreement the government had still failed to persue [*sic*] its obligation with regards to the State charges, whereby the Defendant via assistance of an Attorney had to contact the state to dismiss their charges and thereby being relieved of prosecution." Supplement Petition at 2. This unsworn assertion by the petitioner is in direct contravention to the material supplied to the court by the government. Attached to the affidavit of the present Assistant United States Attorney handling this matter is a copy of a letter written by the prosecuting attorney to the Assistant Essex County Prosecutor, requesting that the then pending state indictment be dismissed. The letter is dated October 7, 1975. Accordingly, I reject the arguments proposed by the petitioner that the government failed to perform its portion of the plea agreement.

(3d Cir. 1978). The criminal defendant must know that the fabrications he intentionally presents to a court of justice will cost him dearly. Society has paid a heavy bill for petitioner's previous lawlessness; it should pay no more. It is time for the defendant to pay.

### Ineffective Assistance of Counsel

The petitioner next contends that his appointed counsel did not provide him with effective legal assistance. He contends that his counsel essentially pressured him into pleading guilty

in that counsel overreached and improperly pressured me by his overall conduct in persuading me to plead guilty in before trial and by having the prosecution and defense counsel terrorize me by threatening me with the sentence of 90 years imprisonment.

Perry Affidavit in Support of Petition para. 3, at 1. I glean from his affidavit, however, that the essence of petitioner's argument is that he was "innocent of the crimes charged and refused to heed the suggestions of my counsel with respect to the interposition of a plea of guilty during the trial proceedings." *Id.* para. 2, at 1.

■ These two assertions are directly contrary to the statements made by the petitioner under oath during the Rule 11 hearing in 1975. At the hearing he testified that he was not threatened or pressured into pleading guilty. Tr. 10 to 11, 14 to 15, 16, 25. He also explained clearly and unequivocally his participation in the series of violent bank robberies for which he was being prosecuted. Tr. 25-19 to 30-15. My discussion of the probative value of petitioner's letters, *supra* at 3, is equally applicable to the present contention. Overall, I conclude that petitioner's allegations, when considered in the light of, and compared with, the court's records and files, are not sufficient to warrant an evidentiary hearing and provide no basis for relief under 28 U.S.C. § 2255. *Crawford v. United States,*

519 F.2d 347, 349-351 (4th Cir. 1975), *cert. denied,* 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976).

### Pyramiding of Sentences

■ As a final ground for granting his petition, Perry contends that the court impermissibly pyramided the sentences on Criminal Nos. 75-463 and 75-459. Sole reliance is placed upon *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). In *Prince,* however, the defendant was sentenced to twenty years for bank robbery and fifteen years for entering the bank with the intent to rob it. The sentences were to be served consecutively. The Supreme Court held that under the statute the crime of entering a bank with intent to commit a robbery was merged with the crime of robbery when the latter was consummated. In the present case, I did not pyramid the sentences. The sentences imposed were, first, for entirely different crimes and, second, none of the sentences imposed by the court were consecutive to any other sentence imposed. Thus, there was no pyramiding of sentences as proscribed by *Prince.*

For the reasons set forth above, the petition is dismissed. The court will enter its own order.